## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

SERPAPI, LLC,

              Plaintiff,

v.

ZILVINAS KUCINSKAS and
SEARCHAPI LLC,

              Defendants.

CASE NO. 1:26-CV-00143

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff SerpApi, LLC ("SerpApi" or "Plaintiff") files this Complaint and Demand for a Jury Trial against Zilvinas Kucinskas and SearchApi LLC ("SearchApi") (collectively, "Defendants").

## INTRODUCTION

1.      SerpApi brings this lawsuit against Mr. Kucinskas and SearchApi to protect its innovative and valuable software. Defendants stole and then used SerpApi's technology to develop a competing company that now offers the same products and tools for crawling websites across the Internet. After discovering Defendants' misconduct, SerpApi attempted to resolve this dispute through discussions with Defendants by providing evidence of how and what information was taken, but Defendants feigned ignorance and attempted to conceal their conduct. But the facts speak for themselves.

2.      Mr. Kucinskas, a former SerpApi contractor and now CEO of SearchApi, improperly retained SerpApi's source code, repeatedly accessed SerpApi's United States-based MongoDB server, and copied SerpApi's computer program for years after his departure from

SerpApi in 2021. He then used that program to start his copycat company, SearchApi. SearchApi now offers products and tools that are the mirror image of SerpApi's.

3.      Mr. Kucinskas was not subtle about his actions. As explained in more detail below, and in the attached declaration by forensic investigators, Mr. Kucinskas continually accessed SerpApi's MongoDB server (located in New Jersey) and systems using the same IP addresses in Lithuania and Latvia that he used to log in to other accounts with his own credentials. Ex. 1 (Schroeder Decl.) ¶¶ 14–17. In fact, Mr. Kucinskas accessed SerpApi's server *29 times* after his departure from SerpApi, including as late as September 8, 2023—after SearchApi was formed. *Id.* ¶ 15. Mr. Kucinskas's improper access was conducted in both his personal capacity and his capacity as CEO of SearchApi.

4.      Mr. Kucinskas's improper access to the MongoDB server demonstrates that he retained SerpApi's codebase on his computer after his departure from SerpApi. Each access to the MongoDB server contains a "fingerprint"—i.e., a driver line—that shows SerpApi's codebase was retained on Mr. Kucinskas's computer for years after his departure from SerpApi. The server that Mr. Kucinskas improperly accessed contained a live, continuously updated, raw and full copy of all of SerpApi's production collections and all of SerpApi's test data, including local tests and related raw data run by SerpApi's engineers. On information and belief, Mr. Kucinskas was able to access this server by improperly retaining and using a test/production backup username and password to which Mr. Kucinskas had access while working for SerpApi. Through investigation, SerpApi also discovered that after Mr. Kucinskas had given notice to leave SerpApi, and just a few days before his departure, he downloaded a customer list by accessing SerpApi's Stripe payment processing platform. *Id.* ¶ 9. Nothing in his job responsibilities required a customer list, and never in his year working with SerpApi had he downloaded such a list before. SerpApi also

discovered that for almost a year after his departure, Mr. Kucinskas continued to access SerpApi's Stripe account. *Id.* ¶ 12. Upon information and belief, Defendants have used and continue to use SerpApi's customer list to solicit its customers.

5.     Defendants' improper access to SerpApi's MongoDB server and systems and use of SerpApi's source code led to an overwhelmingly similar website and overwhelmingly similar products and tools. The near-identical nature of the products and tools, ***including identical bugs in the underlying code***, is evidence that not only did Defendants improperly retain SerpApi's code, but they also copied and pasted SerpApi's code, warts and all. For instance, Defendants copied numerous proprietary products, such as SerpApi's Playground tool and SerpApi's custom formatted web search results. *See, e.g.*, *infra* Section D.2. They also copied the structure and naming of SerpApi's API documentation. *See, e.g.*, *infra* Sections D.3–D.4. In fact, the copying was so blatant that Defendants even failed to fix a bug in SerpApi's code that allowed customers' account balances to go negative. *See, e.g.*, *infra* Section D.1. But Defendants' blatant misconduct did not stop at copying backend code. Defendants further copied frontend, public-facing text displayed on SearchApi's website, including SerpApi's "Easy Integration" section, its unique "US Legal Shield" logo and text, and the names and layout of its pricing plans. *See, e.g.*, *infra* Section D.5. These examples and more, described in detail below, are just the tip of the iceberg of Defendants' theft. Indeed, Defendants' access to SerpApi's code, paired with instances of identical or near-identical backend code, frontend code, and even programming bugs, overwhelmingly demonstrate that Defendants' theft runs much deeper and includes all of SerpApi's copyrighted source code, including its trade secrets embodied therein.

6.     Further, a comparison of SerpApi's development timeline versus SearchApi's timeline to develop the same products and tools is evidence that Defendants did not independently

develop their own products and tools. For example, SerpApi was founded in Austin, Texas, in 2017 and began working with its first customer in November 2017.  Over the last eight years, with 10 to 30 full-time engineers at any given time and $47 million dollars in development costs, SerpApi developed its proprietary products and continued to grow its product offerings for its customer base, which currently comprises thousands of monthly subscribers. SerpApi's growth and success was not achieved overnight. It required nearly a decade of rigorous development and is the result of significant investment in time and resources. The result of those years of work is SerpApi's highly regarded web scraping tool that transforms raw html results from search engines and other sources into structured data sets. SerpApi is considered the best web scraping tool for search engine results. Ex. 4 ("Best Scraper API (best web scraping API) of 2024") at 4; *see also* Ex. 5 ("Google SERP APIs Ranked by Speed, Cost, and Pain Points (2026 Update)") at 5–6, 12.

7.    By contrast, SearchApi was first formed as a new company in July 2022 and miraculously offered an "all-in-one platform," mirroring SerpApi's, less than a year later by May 31, 2023.[1]

---

[1]    While SearchApi's website mirrored SerpApi's by no later than May 31, 2023, earlier versions of the SearchApi.io domain indicate SearchApi may have been serving customers much earlier, unknown to SerpApi. For instance, a screenshot of the SearchApi.io website from March 26, 2023, contains an alleged testimonial from Judith Black, CEO at DataInsights, claiming "I have been using SearchAPI ***for over a year***" (i.e., since at least March 2022). Ex. 6 (https://web.archive.org/web/20230326112835/https://www.searchapi.io/) at 17 (emphasis added). Therefore, "SearchApi" appears to have been made available to customers by Mr. Kucinskas prior to the organization of SearchApi in July 2022.



Ex. 7 (https://web.archive.org/web/20230531181923/https://www.searchapi.io/) at 2. What took SerpApi eight years, a team of up to 30 engineers, and millions of dollars to build, SearchApi purportedly replicated in months with, on information and belief, only five employees. This lightning-speed development is highly unusual to say the least, particularly given the similarities of SearchApi's products to SerpApi's products and the improper retention and access to SerpApi's server, systems, and source code. In sum, this timeline defies any explanation other than that Defendants stole and copied SerpApi's proprietary code and other intellectual property. Defendants had access to SerpApi's code. Defendants then used that information to develop competing products and tools, with almost identical features, in a matter of months. These products and tools are offered over the Internet and are available in the United States. Upon information and belief, SearchApi has United States-based customers of these products and tools.

8.     This copying of SerpApi's computer program and theft of its trade secrets is also a violation of Mr. Kucinskas's Independent Contractor Agreement with SerpApi. Ex. 3 (Independent Contractor Agreement). The terms of that contract, which Mr. Kucinskas agreed to as a condition of his relationship with SerpApi, required him to keep SerpApi's confidential information "in strictest confidence." *Id.* § 4(b). Mr. Kucinskas did not do so.

9.    Despite months of correspondence between SerpApi and Defendants, explaining Defendants' trade secret misappropriation and copyright infringement as well as Mr. Kucinskas's breach of contract, Defendants continue to feign ignorance despite the evidence against it. SerpApi is left with no choice but to pursue relief in this Court to protect its proprietary and confidential software that is the foundation for all of its products and service offerings.

10.    For the reasons explained herein, SerpApi brings this action against Mr. Kucinskas for breach of his Independent Contractor Agreement and against Defendants for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*, for trade secret misappropriation in violation of both the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A *et seq.*, and for violations under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*

## **PARTIES**

11.    SerpApi is a Texas LLC with a principal place of business at 5540 N. Lamar Blvd. #12, Austin, TX 78751.

12.    Upon information and belief, SearchApi is a Wyoming LLC with a principal place of business at 447 Broadway, 2nd Floor, 376, New York, NY 10013.  Its agent for service of process is FBRA LLC, who can receive service at 1603 Capitol Avenue, Suite 413A #2932, Cheyenne, WY 82001.

13.    Upon information and belief, Zilvinas Kucinskas is a Lithuanian national, residing at V. Zalakevičiaus Str. 4c-19, Vilnius, LT-10111.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over SerpApi's federal Trade Secret Misappropriation claim pursuant to 28 U.S.C. § 1331 because it arises out of a violation of federal law, the DTSA, 18 U.S.C. § 1836 et seq.

15.    This Court has subject matter jurisdiction over SerpApi's Copyright Infringement claim pursuant to 28 U.S.C. §§ 1331, 1338(a) because it arises out of a violation of the federal Copyright Act, 17 U.S.C. § 101 *et seq.*

16.    This Court has subject matter jurisdiction over SerpApi's Computer Fraud and Abuse Act claim pursuant to 28 U.S.C. § 1331 because the CFAA is a law of the United States, 18 U.S.C. § 1030 *et seq*.

17.    This Court also has supplemental jurisdiction over any asserted state-law claim, including the Breach of Contract and TUTSA claims, pursuant to 28 U.S.C. § 1367(a) because the federal- and state-law claims derive from a common nucleus of operative fact.

18.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000, and this action is between citizens of different states and a citizen of a foreign state is an additional party.

19.    This Court has personal jurisdiction over Mr. Kucinskas because he agreed in his employment contract that "[a]ny claim arising under this Agreement shall be brought in the courts of the State of Texas . . . ." Ex. 3 § 9. Because Mr. Kucinskas breached his employment contract by wrongfully misappropriating SerpApi's trade secrets and confidential information and infringing SerpApi's copyrighted material, Mr. Kucinskas has sufficient minimum contacts with the forum for the Court to exercise specific personal jurisdiction over him. Further, Mr. Kucinskas's actions had foreseeable effects in the forum and were purposefully directed at

7

residents (*i.e.*, SerpApi) of the Western District of Texas. Thus, Mr. Kucinskas should have reasonably anticipated being haled into court in this District.

20.    This Court has personal jurisdiction over SearchApi because Mr. Kucinskas acted as the agent of his company, SearchApi, in misappropriating SerpApi's trade secrets, infringing SerpApi's copyrighted material, and violating the CFAA. Indeed, as CEO, Mr. Kucinskas's actions may be imputed to SearchApi. SearchApi also ratified the conduct of its CEO, Mr. Kucinskas, by using and profiting from the trade secrets and copyrighted information that he took. SearchApi should therefore have reasonably anticipated being haled into a Texas court for the same reasons as its CEO. SearchApi has purposefully directed its activities at Texas and has purposefully availed itself of the benefits of doing business in Texas by targeting and taking technology and customers from SerpApi, which is based in Austin, Texas. Further, on information and belief, SearchApi conducts business in the State of Texas and in this District. In addition, various customers of SearchApi have substantial operations in the State of Texas and in this District.

21.    Venue is proper as to Mr. Kucinskas because, as a non-resident, he may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

22.    Venue is proper as to SerpApi's trade secret claim and CFAA claim under 28 U.S.C. § 1391(b)(1) because "an entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action . . . ." 28 U.S.C. § 1391(c)(2). Venue is also proper as to SerpApi's trade secret claim and CFAA claim under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in the Western District of Texas—*e.g.*, SerpApi's trade secrets and copyrighted material were primarily developed in Austin, and Defendants have caused and

8

continue to cause harm to SerpApi in Austin such that the effects of Defendants' actions are felt in this District.

23.    Venue is proper as to SerpApi's copyright claim under 28 U.S.C. § 1400(a) because as an entity subject to this court's personal jurisdiction, SearchApi "may be found" in the district.

## ADDITIONAL FACTUAL ALLEGATIONS

**A.    SerpApi's Proprietary Materials Are Critical To Its Business**

24.    SerpApi's proprietary materials include valuable trade secrets and copyrighted materials.

25.    SerpApi's copyrights include its website materials and its frontend and backend code. SerpApi has registered its computer program with the U.S. Copyright Office as Copyright Registration No. TXu002515424.[2] *See* Ex. 2 (Copyright Registration)

26.    SerpApi's trade secrets relate to and are embodied in the software services and products it provides, specifically its proprietary web scraping tools and the development behind its JSON-formatted files. These trade secrets include, for example, confidential SerpApi source code and documentation, including confidential and proprietary backend and frontend code used to scrape search engine results and reformat those results in uniformly formatted JSON files. Additionally, SerpApi maintains confidential customer lists, including customers SerpApi does not publicly identify for competitive purposes. These customer lists are also SerpApi trade secrets. SerpApi's trade secrets relate to products or services used, sold, purchased, or transported, or

---

[2]    Registration of code with the U.S. Copyright Office does not require that all code protected by a copyright be disclosed to the Office and made publicly available. As such, while SerpApi did submit a source code deposit to the U.S. Copyright Office, as is required, the majority of SerpApi's code remains confidential and a trade secret while also protected by a valid copyright.

intended for use, sale, purchase, or transport, across the United States, which are offered and supplied to customers throughout the United States and around the world.

27.    For years SerpApi poured time, money, and expertise into developing its proprietary materials, including its web scraping and data compilation tools, that serve as the backbone of SerpApi's products and services. Despite SerpApi's status as a small start-up company, SerpApi's technology rendered SerpApi a leader in the industry, and SerpApi's valuable trade secrets contribute to the overall success of its business. That value can be attributed, at least in part, to the confidential nature of SerpApi's trade secrets that differentiate it from its competitors in the field. Indeed, SerpApi spent nearly a decade independently developing its own proprietary web scraping and data compilation tools through years of dedicated expertise and tens of millions of dollars in financial investment and resources. For example, SerpApi's Playground tool alone cost almost ten million dollars and the work of four full-time engineers to develop. Approximately twenty percent of all SerpApi's resources have gone to and continue to go to the Playground tool's creation, maintenance, and improvement.

28.    SerpApi's trade secrets, including, but not limited to, its proprietary source code, are foundational to its success as a business and include significant, highly confidential materials that SerpApi requires its employees and contractors to keep "in strictest confidence."  Ex. 3 § 4(b).

### B.    SerpApi Employees and Contractors, Including Mr. Kucinskas, Are Obligated to Hold SerpApi's Proprietary Materials Confidential

29.    SerpApi takes extensive measures to protect the confidentiality of its trade secrets and confidential information, including with respect to Mr. Kucinskas. For example, SerpApi requires every employee and contractor to sign a confidentiality agreement as a condition of their employment. Contractors explicitly promise in their employment agreements that they will hold all confidential information in the strictest confidence. For example, on July 22, 2020, when Mr.

Kucinskas was hired (and as a condition of his employment), Mr. Kucinskas entered into a confidentiality agreement with SerpApi. *See* Ex. 3. This Independent Contractor Agreement was supported by valuable consideration—*i.e.*, in exchange for Mr. Kucinskas's services, he would receive compensation in the form of payment for his services. *Id.* § 2. Pursuant to the Independent Contractor Agreement, Mr. Kucinskas agreed that he "[would] (i) hold all Confidential Information in strictest confidence; (ii) not use any Confidential Information except to benefit [SerpApi] or its customer; and (iii) not disclose any Confidential Information to any person or entity without the written consent of [SerpApi]." *Id.* § 4(b). As a result of his agreement to the contract, Mr. Kucinskas's obligations to SerpApi include maintaining strict confidentiality of SerpApi's trade secrets and confidential information both during his contractual relationship with SerpApi and after it ended.

30.    Upon an employee's or contractor's departure from the company, SerpApi conducts an exit interview, reminding them of their confidentiality obligations. SerpApi also tracks termination of access on GitHub, and SerpApi uses database exchange and collaboration systems like GitHub that allow the company to set permissions for assignments and track who made what change and when. Permissions are granted in a restrictive fashion. Additionally, SerpApi uses Mobile Device Management systems and Endpoint Detection and Response systems to enforce security policies that protect its trade secrets. Permissions to SerpApi's source code, documents, and other confidential materials are granted in a restrictive fashion—i.e., employees and contractors are only given access to confidential and trade secret information on a need-to-know basis. SerpApi's efforts to maintain the secrecy of its confidential information also include using passwords and encryption to protect its servers and repositories, limiting distribution of confidential information to key employees and contractors, and providing written policies and

procedures that emphasize employees' and contractors' duties to maintain the secrecy of SerpApi's confidential information. These policies are listed in the contracts that SerpApi requires its employees and contractors to sign as a condition of their employment with SerpApi.

31.    SerpApi also has an internal security wiki that includes security tips for employees and contractors, each of whom is explicitly required to read the wiki as a part of their onboarding process. The wiki additionally confirms that remote users may not copy data to remote non-corporate devices when using remote terminal services. The wiki also specifies SerpApi's process for requesting and approving access to systems; such access is provisioned according to the principle of least privilege, and user access rights are reviewed periodically.

### C.    Defendants Accessed and Downloaded SerpApi's Confidential Information

32.    From July 2020 to July 2021, Mr. Kucinskas was a Senior Software Engineer with a focus on SerpApi's backend development. As a Senior Software Engineer, Mr. Kucinskas had access to SerpApi's confidential files, servers, and proprietary information, including SerpApi's entire codebase. Notably, as a Senior Software Engineer, as is typical of someone in this role at SerpApi, Mr. Kucinskas had access to SerpApi's backend and frontend source code for development purposes. This included access to SerpApi's production, test, and backup production servers. Mr. Kucinskas's role had a particular focus on setting up servers, which required full access to them.

33.    When Mr. Kucinskas left SerpApi in 2021, he stated that he was leaving to work on cryptocurrency. SerpApi did not hear from or about Mr. Kucinskas for years. Public resources suggest that during this time Mr. Kucinskas was primarily living and working in London as the founder of ExportData.io, a software platform that purports to specialize in Twitter data extraction. *See* Ex. 9 (Mr. Kucinskas's LinkedIn profile).

34.    SerpApi eventually became aware of a new competitor company named SearchApi that was offering products and services strikingly similar to SerpApi's. In June 2025, SerpApi discovered Mr. Kucinskas was the CEO of SearchApi via a picture of Mr. Kucinskas attached to a SearchApi email address, which was deleted shortly after SerpApi's discovery. Mr. Kucinskas's attorney later confirmed that Mr. Kucinskas is SearchApi's CEO.

35.    While at SerpApi, and in his capacity as a Senior Software Engineer, Mr. Kucinskas had access to SerpApi's entire codebase, including production and test servers. But under no circumstances was Mr. Kucinskas permitted to keep and use SerpApi's proprietary material, including any of SerpApi's code. *See* Ex. 3 § 4. Yet a forensic investigation has confirmed that Mr. Kucinskas did indeed continue to access SerpApi's proprietary code for years after he left his employment at SerpApi. *See* Ex. 1 ¶¶ 13–18.

36.    For example, SerpApi discovered that on July 12, 2021—just eleven days before his departure from SerpApi—Mr. Kucinskas accessed and downloaded SerpApi's customer list by accessing SerpApi's payment processing platform, Stripe. *Id.* ¶ 9. Mr. Kucinskas's technical and engineering role at SerpApi presented no need to download this marketing and financial information in bulk as he did. Mr. Kucinskas's conduct was improper and suggestive of an intent to use this data outside of SerpApi in violation of his common-law and contractual duties to keep this information confidential. But Mr. Kucinskas did not stop there. He logged in to Stripe three more times after leaving the company: on August 2, 2021; November 9, 2021; and June 7, 2022—nearly a year after his departure. *Id.* ¶ 12. Mr. Kucinskas knew of his obligation to keep SerpApi's trade secret information confidential, yet he continued to improperly access that material long after his departure from SerpApi. Upon information and belief, Defendants have used and continue to

use this customer list to solicit SerpApi's customers to use SearchApi's copycat products and services.

37.    SerpApi also discovered that Mr. Kucinskas continuously and repeatedly accessed SerpApi's MongoDB server after his departure from SerpApi using a test user's set of credentials. Specifically, Mr. Kucinskas used at least two of his known IP addresses (196.240.54.21 and 78.61.206.75) to access SerpApi's MongoDB server. *See id.* ¶¶ 14–15 (confirming that Mr. Kucinskas had previously used these exact IP addresses to log in to his Stripe account). Between June 7, 2022, and September 8, 2023, Mr. Kucinskas improperly accessed SerpApi's MongoDB server at least 29 times with just these two IP addresses. *See id.* ¶ 15. Additionally, a forensic investigation found that it was likely that Mr. Kucinskas accessed MongoDB using three other IP addresses between 2022 and 2023. *See id.* ¶ 18.

38.    The repeated connections to the MongoDB server demonstrate that Mr. Kucinskas improperly retained and accessed SerpApi's code on his computer. When an engineer launches an instance of SerpApi's codebase and tries to read or write data, a connection is made to SerpApi's MongoDB server. As such, each instance of Mr. Kucinskas's IP address connecting to the MongoDB server demonstrates an instance of Mr. Kucinskas logging in to SerpApi's code.

### D.    Examples of SearchApi's Copying

39.    SearchApi's products undeniably mirror SerpApi's products. Based on SerpApi's investigation to date, and a forensic investigator's investigation (Ex. 1 (Schroeder Decl.)), Defendants retained, stole, copied, and used SerpApi's trade secrets and copyrighted source code. Despite multiple requests to Defendants to allow an independent forensic investigator to review and investigate exactly what and how much information Defendants stole, Defendants declined to participate in this investigation. Thus, SerpApi cannot ascertain the full extent of Defendants' theft and copying because SerpApi does not have access to SearchApi's code. But based on SerpApi's

subsequent investigation and the facts described herein (*e.g.*, improper retention and access, rapid development, minimal resources, and near-identical products), Defendants' theft and misappropriation are rampant.

40.    Below are just a few examples of the overlap in SerpApi's and SearchApi's products and tools. On information and belief, these examples are just the tip of the iceberg on exactly how much Defendants stole, copied, and used. Indeed, these examples are evidence that Defendants' theft and copying runs much deeper because they are identical individually and because of the cumulative similarity across SearchApi's website and products to SerpApi's. While Defendants continue to modify their website in an attempt to create surface-level differences between SerpApi's products and SearchApi's products, these superficial changes do not change the fact that SearchApi made extensive use of SerpApi's proprietary and copyrighted technology to build its products, tools, and website.

### 1.    Account Credits

41.    Defendants' brazen copying and use of SerpApi's backend code is undeniable in view of their copying of bugs in SerpApi's code—a near impracticability on its own and even further implausible when viewed in conjunction with the other cumulative evidence of copying and theft described in this complaint.

42.    For example, Defendants copied certain of SerpApi's Account API fields and the supporting backend code, including the copying of a bug in the code that results in negative account credits to a user. For example, SerpApi's Account API fields include multiple fields that are similar or identical:

| SerpApi |
|---|

```json
{} JSON Example

{
    "account_id": "5ac54d6adefb2f1dba1663f5",
    "api_key": "SECRET_API_KEY",
    "account_email": "demo@serpapi.com",
    "plan_id": "bigdata",
    "plan_name": "Big Data Plan",
    "plan_monthly_price": 250.0,
    "searches_per_month": 30000,
    "plan_searches_left": 5958,
    "extra_credits": 0,
    "total_searches_left": 5958,
    "this_month_usage": 24042,
    "last_hour_searches": 42,
    "account_rate_limit_per_hour": 6000
}
```

Ex. 10 (https://serpapi.com/account-api).

| SearchApi |
|---|

```json
Response

{
    "account": {
        "current_month_usage": 4800,
        "monthly_allowance": 10000,
        "remaining_credits": 5200
    },
    "api_usage": {
        "searches_this_hour": 250,
        "hourly_rate_limit": 200000
    },
    "subscription": {
        "period_start": "2024-12-04T00:34:59Z",
        "period_end": "2025-01-04T00:34:59Z"
    }
}
```

Ex. 11 (https://www.searchapi.io/docs/account-api) at 2.

43.    These similarities, along with the other examples of copying in this complaint, are evidence that SearchApi's underlying source code is shockingly similar to SerpApi's source code.

Further, these examples, even though publicly available, are evidence of copyright infringement by Defendants and evidence of Defendants' improper and repeated accesses of SerpApi's protected code containing its trade secrets and confidential information.

44.    Critically, a comparison of SerpApi's and SearchApi's Account API names also uncovered that SearchApi copied a bug in SerpApi's code. SerpApi's code allows for the calculation of negative search credits on a user's account. SearchApi's user interface similarly calculates and displays negative remaining search credits. The negative credits are a result of a bug in SerpApi's design, and the most probable reason it would appear in another entity's code would be from copying SerpApi's backend code.

45.    As another example, both SerpApi and SearchApi have the same default hourly rate value of 200000. *See* Ex. 11 at 2 (showing hourly rate limit as 200000). Mr. Kucinskas even worked on this code when he was a contractor at SerpApi.

## 2.    SerpApi's Playground Tool

46.    Defendants also copied and used SerpApi's unique "Playground" tool, reflecting at least copyright infringement. SerpApi first developed its "Playground" in October 2017. This tool allows users and customers to test search queries and immediately review the corresponding output in SerpApi's JSON-formatted Playground.

**Example from SerpApi.com:**



Ex. 12 (SerpApi.com) at 1.

47.    Notably, in May 2023, SearchApi offered the same feature with an identical layout—i.e., the search results on the left and the JSON-formatted results on the right.

**Example from SearchApi.io:**



Ex. 7 at 1.

48.    Not only are the layouts of SerpApi's Playground tool and SearchApi's tool the same, but the response fields for the JSON-formatted outputs are also structured nearly identically and, in many cases, include identical response field names, indicating that the underlying source code is also similar or the same. JSON files are a type of file format that can be used to structure data in a specific format. For example, if website data is stored in html, a program can be written to take the html and reformat it into a custom JSON format with custom response field names. For two different companies to both format their JSON files with the same response field names in the same order without copying is highly unlikely.

19

49.    Yet here, a simple search in both SerpApi's and SearchApi's tools for "coffee"

demonstrates that multiple response field names are identical and in the same order:

| SerpApi | SearchApi |
|---------|-----------|
| `"search_metadata": {`<br>`  "id": "695925908c24bd247f1be79`<br>`  "status": "Success",`<br>`  "json_endpoint": "https://serp`<br>`  "created_at": "2026-01-03 14:2`<br>`  "processed_at": "2026-01-03 14`<br>`  "google_url": "https://www.goo`<br>`  "raw_html_file": "https://serp`<br>`  "total_time_taken": 0.86`<br>`},` | `"search_metadata": {`<br>`  "id": "search_z9qLVyexP1TbLYXbGeN`<br>`  "status": "Success",`<br>`  "created_at": "2026-01-16T16:01:4`<br>`  "request_time_taken": 1.23,`<br>`  "parsing_time_taken": 0.58,`<br>`  "total_time_taken": 1.81,`<br>`  "request_url": "https://www.googl`<br>`  "html_url": "https://www.searchap`<br>`  "json_url": "https://www.searchap`<br>`},` |
| `"search_parameters": {`<br>`  "engine": "google",`<br>`  "q": "Coffee",`<br>`  "location_requested": "Austi`<br>`  "location_used": "Austin,Tex`<br>`  "google_domain": "google.com`<br>`  "device": "desktop"`<br>`},` | `"search_parameters": {`<br>`  "engine": "google",`<br>`  "q": "Coffee",`<br>`  "device": "desktop",`<br>`  "google_domain": "google.com",`<br>`  "hl": "en",`<br>`  "gl": "us"`<br>`},` |

| SerpApi | SearchApi |
|---|---|
| ```"search_information": {<br>  "query_displayed": "Coffee",<br>  "total_results": 3140000000,<br>  "time_taken_displayed": 0.34,<br>  "organic_results_state": "Res<br>  "results_for": "Austin, TX"<br>},``` | ```"search_information": {<br>  "query_displayed": "Coffee",<br>  "total_results": 3350000000,<br>  "time_taken_displayed": 0.47,<br>  "detected_location": "New York NY",<br>  "has_no_results_for": false<br>},``` |
| ```"knowledge_graph": {<br>  "title": "Coffee",<br>  "type": "Beverages",<br>  "kgmid": "/m/02vqfm",<br>  "knowledge_graph_search_link": "https:<br>  "serpapi_knowledge_graph_search_link":``` | ```"knowledge_graph": {<br>  "title": "Coffee",<br>  "type": "Beverages",<br>  "description": "Coffee is a<br>  "source": {<br>    "name": "Wikipedia",<br>    "link": "https://en.wikipe<br>  },``` |

*Compare* Ex. 12 at 1 and Ex. 13 at 1, *with* Ex. 14 (SearchApi.io) at 2 and Ex. 15 (SearchApi.io) at 2.[3]

### 3. Full API JSON Response

50.    Defendants did not limit their copying of JSON response field names to the Playground tool. A comparison of SerpApi's and SearchApi's full API JSON response reveals that

---

[3]    Ex. 12 and Ex. 13 are screenshots of the same webpage (SerpApi.com) capturing different parts of the JSON results in SerpApi's Playground tool, which requires scrolling within the webpage. Likewise, Ex. 14 and Ex. 15 are screenshots of the same webpage (SearchApi.io) capturing different parts of the JSON results in SearchApi's tool, which requires scrolling within the webpage.

SearchApi continuously uses identical or near-identical response field names in substantially the same order, reflecting at least copyright infringement.

51.     For example, the JSON response from the Google Search API request for "coffee" shows that SerpApi and SearchApi organize search results in the same way and with the same response field names:

| SerpApi | SearchApi |
|---|---|
| ```"organic_results": [   {     "position": 1,     "title": "Coffee",     "link": "https://en.wikipedia.org/     "redirect_link": "https://www.goog     "displayed_link": "https://en.wiki     "thumbnail": "https://serpapi.com/     "favicon": "https://serpapi.com/se     "snippet": "Coffee is a beverage b     "snippet_highlighted_words": [       "a beverage brewed from roasted,     ],     "sitelinks": {       "inline": [``` | ```"organic_results": [   {     "position": 1,     "title": "Coffee",     "link": "https://en.wikipedia.org/     "source": "Wikipedia",     "domain": "en.wikipedia.org",     "displayed_link": "https://en.wiki     "snippet": "Coffee is a beverage b     "snippet_highlighted_words": [       "a beverage brewed from roasted,     ],     "sitelinks": {       "inline": [``` |

Both responses organize the "position," "title," "link," "displayed link," "snippet," "snippet_highlighted_words," "sitelinks," and "inline" response fields in the ***same*** order and with the ***same*** names. *See also* Appendix 1, Example 1.

52.     As another example, the JSON response for a Google Flights search for flights from Beijing to Austin with a connection in San Francisco also demonstrates that the order and names of the JSON response fields are nearly identical:

| SerpApi | SearchApi |
|---|---|

```
"best_flights": [
  {
    "flights": [
      {
        "departure_airport": {
          "name": "Beijing Capital International Airport"
          "id": "PEK",
          "time": "2025-10-08 17:25"
        },
        "arrival_airport": {
          "name": "San Francisco International Airport",
          "id": "SFO",
          "time": "2025-10-08 14:05"
        },
        "duration": 700,
        "airplane": "Boeing 777",
        "airline": "United",
        "airline_logo": "https://www.gstatic.com/flights/
        "travel_class": "Economy",
        "flight_number": "UA 889",
        "legroom": "31 in",
        "extensions": [
          "Average legroom (31 in)",
          "Wi-Fi for a fee",
          "In-seat power & USB outlets",
          "On-demand video",
          "Carbon emissions estimate: 774 kg"
        ],
        "overnight": true
      },
```

```
"best_flights": [
  {
    "flights": [
      {[
        "departure_airport": {
          "name": "Beijing Capital International Airport",
          "id": "PEK",
          "date": "2025-10-08",
          "time": "17:25"
        },
        "arrival_airport": {
          "name": "San Francisco International Airport",
          "id": "SFO",
          "date": "2025-10-08",
          "time": "14:05"
        },
        "duration": 700,
        "airplane": "Boeing 777",
        "airline": "United",
        "airline_logo": "https://www.gstatic.com/flights/a
        "travel_class": "Economy",
        "flight_number": "UA 889",
        "is_overnight": true,
        "extensions": [
          "Power and USB outlets",
          "On-demand video",
          "Wi-Fi for fee",
          "Seat type Average Legroom",
          "Legroom 31 inches",
          "Carbon emission: 774 kg"
        ],
```

Both responses organize the "best_flights," "flights," "departure_airport," "name," "id," "arrival_airport," "name," "id," "duration," "airplane," "airline," "airline_logo," "travel_class," "flight_number," and "extensions" response fields in the *same* order and with the *same* names. *See also* Appendix 1, Example 4.

53.    These are just two examples in a litany of other API responses tested. Appendix 1 shows additional exemplary comparisons of SerpApi's and SearchApi's JSON output files. The substantial overlap in the JSON response fields and the order in which the API parameters are listed are indicative of at least copyright infringement. Like the Playground tool, SerpApi's JSON responses were designed by its engineers—i.e., both the structure and names are unique to

SerpApi. Again, for two different companies to both format their JSON files with the same response field names in substantially the same order without copying is highly unlikely.

### 4.    API Parameters

54.    Defendants also copied large portions of SerpApi's API parameter names and documentation, reflecting additional instances of copyright infringement. For example, at least 48 different URL fragments from SerpApi's website also appear as identical fragments on SearchApi's domain. A URL fragment is created by the website designer as a part of a full URL, allowing a browser to navigate directly to a particular section within a web page. But unlike a full URL, URL fragments are used extensively across documentation pages. As such, the 48 identical URL fragments do not reflect 48 instances of copying. Far from it. For instance, the fragment, #api-examples, appears **73 times** across SearchApi's website. In total, the 48 URL fragments are used **666 times** across SearchApi's website. To have large portions of two websites with overlapping URL fragments—structural documentation components deeply embedded within the layout and code of multiple webpages—would be very unusual absent copying.

55.    Further, the underlying API documentation on SearchApi's website appears to have been copied from SerpApi's website. For example, the images below show the same parameters from the same URL fragments with almost verbatim identical descriptions.

**Example from SerpApi.com:**



Ex.    16    (https://web.archive.org/web/20250823062840/https://serpapi.com/search-api#api-parameters-geographic-location) at 2.

**Example from SearchApi.io:**



Ex. 17 (https://web.archive.org/web/20250819213652/https://www.searchapi.io/docs/google) at 1.

56.    As another example, SearchApi copied multiple field names from SerpApi's Locations    API.    *See*    Ex.    18    (https://serpapi.com/locations-api);    Ex.    19 (https://www.searchapi.io/docs/locations-api). The Locations API for both SearchApi and

SerpApi is derived from Google's Geo Targets API. Both SerpApi and SearchApi use Google's API, and both miraculously mapped two of Google's field names to the same name. Specifically, Google's "Criteria ID" and "Parent ID" are converted to "google_id" and "google_parent_id" respectively for both SerpApi and SearchApi. SerpApi created these field names, and SearchApi's verbatim use of the same field names is another example of copying from SerpApi.

57.    SearchApi also copied SerpApi's custom "reach" field in its Locations API. *See* Ex. 18; Ex. 19. SerpApi created the "reach" field in its backend code. It is used to extract an estimate of the number of people within a location target from the "Google Ad Preview" website. SerpApi then added it to its Locations API MongoDB database. SearchApi's Locations API contains this same custom field.

58.    These are just a couple examples of SearchApi's copying of API parameters and JSON response fields. The similarity of just these examples alone would be unusual in itself, but the repetition across SearchApi's API Documentation that mirrors SerpApi's API Documentation is again nearly impossible to replicate with such similarity without copying.

### 5.    Additional Copying Examples

59.    In addition to the examples above, there are numerous other examples of copying text and features from SerpApi's website. While these examples are publicly listed on SerpApi's website, they demonstrate the pervasiveness of Defendants' copying of SerpApi's proprietary materials across the board—i.e., if these publicly available examples of copying are so pervasive, on information and belief, SearchApi's backend code also mirrors SerpApi's backend code, which Defendants stole, copied, and used.

60.    For example, SerpApi's website contains a section titled "Easy Integration," which employs a GET HTTP request. SearchApi's website contains a section with the exact same title and the exact same function.

**Example from SerpApi.com:**



Ex. 12 at 2.

**Example from SearchApi.io:**

Ex. 14 at 2–3.

61.    As another example, SerpApi's website home page previously contained a "Legal U.S. Shield" that explains its protections under the First Amendment. This Legal Shield was a concept created at SerpApi and, until now, was unique to SerpApi. Yet as recently as October 5, 2025, SearchApi's website contained a strikingly similar paragraph titled "U.S. Legal Shield" with a nearly verbatim description of the "U.S. Legal Shield" text as it appears on SerpApi's website.

**Example from SerpApi.com:**



**U.S. Legal Shield**

The crawling and parsing of public data is protected by the First Amendment of the United States Constitution. We value freedom of speech tremendously. We assume scraping and parsing liabilities for both domestic and foreign companies unless your usage is otherwise illegal. (Including but are not limited to: acts of cyber criminality, terrorism, pedopornography, denial of service attacks, and war crimes.)

Ex. 12 at 4.

**Example from SearchApi.io:**



LEGAL PROTECTION

**U.S. Legal Shield**

Our processes of crawling and parsing public data are protected by the First Amendment of the U.S. Constitution. We take on the legal responsibilities associated with these methods for both domestic and international entities. This does not apply if the entities are involved in illegal activities according to U.S. federal law, including but not limited to cybercrime, terrorism, child exploitation, denial-of-service attacks, and war crimes.

Ex. 8 (https://web.archive.org/web/20251005220732/https://www.searchapi.io/) at 3. This striking similarity to a unique SerpApi feature is another indication that Defendants copied from SerpApi and its underlying code.

62.    Defendants recently modified the "U.S. Legal Shield" to "Legal Protection Guarantee" and changed the corresponding paragraph description, Ex. 14 at 3, after SerpApi notified Defendants of this blatant copying. These superficial changes to the text of SearchApi's website do not undermine the facts showing that SearchApi's website, products, and tools are built off of SerpApi's codebase.

63.    As another example, the names of SearchApi's pricing plans are identical to those of SerpApi's.

**Example from SerpApi.com:**



Ex. 12 at 4–5.

**Example from SearchApi.io:**



Ex. 8 at 3.

64.    Not only are the visual layouts of the payment plans similar, but the names of three out of the four payment tiers themselves are identical. Just like SerpApi, SearchApi offers plans under the names "Developer," "Production," and "Big Data." The match of unique names suggests that Defendants copied rather than independently created their pricing plan page.

## **FIRST CAUSE OF ACTION**

(Violation of Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1837)

65.    SerpApi re-alleges and incorporates all the above paragraphs as though fully set forth herein.

66.     SerpApi is the owner of certain valuable trade secrets and confidential information, described in paragraphs 26–28, which constitute "trade secrets" within the meaning of 18 U.S.C. § 1839(3).

67.     SerpApi's trade secrets and confidential information relate to products and services used, sold, purchased, or transported, or intended for use, sale, purchase, or transport, throughout the country and the world.

68.     SerpApi's trade secrets and confidential information derive independent economic value, both actual and potential, from not being generally known to and not being readily ascertainable through proper means by SerpApi's competitors or other persons or entities who might obtain economic value from their disclosure and use.

69.     As described in paragraphs 29–31, SerpApi has, at all relevant times, taken reasonable measures to protect the secrecy and confidentiality of its trade secrets and confidential information.

70.     Mr. Kucinskas gained access to SerpApi's trade secrets and confidential information through his employment relationship with SerpApi. He misappropriated SerpApi's trade secrets at least by acquiring SerpApi's trade secrets by improper means and using and disclosing those trade secrets to develop copycat products and tools at SearchApi.

71.     Mr. Kucinskas, through the course of his contractual relationship with SerpApi, signed an Independent Contractor Agreement that prohibited him from disclosing SerpApi's confidential trade secrets to others. Ex. 3 at 2.  Mr. Kucinskas knew that SerpApi's code, client list, and other confidential materials that were misappropriated are confidential and trade secrets and could not properly be possessed, disclosed, or used by himself or others.

72.    Mr. Kucinskas is the CEO of SearchApi, and his misappropriation of SerpApi's trade secrets occurred, and is occurring, during and within the scope of his employment at SearchApi. Mr. Kucinskas's actions were undertaken for the benefit of SearchApi to give SearchApi an unfair advantage in competing against SerpApi. SearchApi is therefore at least vicariously liable for Mr. Kucinskas's misappropriation of SerpApi's trade secrets, in addition to being directly liable for its own improper acquisition and use of SerpApi's trade secrets. SerpApi's trade secrets and confidential information were acquired under circumstances giving rise to a duty to maintain the secrecy of SerpApi's trade secrets and confidential information. Such information was derived from Mr. Kucinskas, who owed a duty to SerpApi to maintain the secrecy of its trade secrets and confidential information.

73.    Mr. Kucinskas used and disclosed SerpApi's trade secrets and confidential information, as described above in paragraphs 32–38, to start his own competitor company and in his role as an executive of that company to develop, use, sell, and transport products and services based on SerpApi's trade secrets and confidential information.

74.    SearchApi has used and continues to use SerpApi's trade secrets and confidential information within its products and services and as part of a strategy to acquire and retain SerpApi's customers.

75.    Mr. Kucinskas knew that his taking, retention, disclosure, and use of SerpApi's trade secrets, as described above, was improper. Mr. Kucinskas agreed to the terms of the Independent Contractor Agreement, requiring him to keep SerpApi's materials in the strictest confidence. *See* Ex. 3. Instead, he intentionally and affirmatively decided not to do so. Mr. Kucinskas then disclosed SerpApi's trade secrets and confidential information to SearchApi to improperly use and expedite the development of his own competitor product.

76. Defendants' actions constitute "misappropriation" within the meaning of 18 U.S.C. § 1839(5).

77. SerpApi has been injured as a direct and proximate result of Defendants' conduct and is threatened with further injury, in an amount to be proven at trial. SerpApi has incurred, and will continue to incur, damages, costs, and expenses, including attorneys' fees due to Defendants' misappropriation. As a result of Defendants' misappropriation, they have been unjustly enriched.

78. Defendants' misappropriation of SerpApi's trade secrets was willful, malicious, and conducted in bad faith. Mr. Kucinskas executed a premeditated plan: he downloaded SerpApi's customer list days before his departure, retained unauthorized access credentials, and then accessed SerpApi's servers containing its complete source code at least 29 times over a 15-month period (while simultaneously building SearchApi). He did so knowing he had signed an agreement requiring him to hold SerpApi's confidential information "in strictest confidence." SearchApi, under Mr. Kucinskas's direction as CEO, then monetized the stolen technology by selling products and services built on SerpApi's code to target and acquire SerpApi's own customers. In sum, Defendants improperly accessed, then used and disclosed, SerpApi's trade secrets to build a competitor company. When SerpApi confronted Defendants with evidence of their misconduct, Defendants refused to allow any independent inspection of their systems—conduct consistent only with a desire to conceal the full extent of their theft. Defendants' willful, malicious, and bad-faith conduct warrants the maximum exemplary damages permitted by law.

79. Defendants' continuous harm to SerpApi leaves no adequate remedy at law. Unless and until enjoined by this Court, Defendants continue to improperly retain and use SerpApi's trade secrets. Defendants' continuous harm requires (1) enjoining Defendants from further possessing,

using, or disclosing SerpApi's trade secret and confidential information and (2) requiring Defendants to return all copies of SerpApi's trade secrets and confidential information to SerpApi.

## SECOND CAUSE OF ACTION

(Violation of Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A)

80.     SerpApi re-alleges and incorporates all the above paragraphs as though fully set forth herein.

81.     SerpApi is the owner of valuable trade secrets and confidential information, described in paragraphs 26–28, and which constitute "trade secrets" within the meaning of Tex. Civ. Prac. & Rem. Code § 134A.002(6).

82.     SerpApi's trade secrets and confidential information derive independent economic value, both actual and potential, from not being generally known to and not being readily ascertainable through proper means by other persons or entities who might obtain economic value from their disclosure and use.

83.     As described in paragraphs 29–31, SerpApi has, at all relevant times, taken reasonable measures under the circumstances to protect the secrecy of its trade secrets and confidential information.

84.     Defendants acquired SerpApi's trade secrets by improper means through at least theft and breach of a duty to maintain the secrecy of SerpApi's trade secrets. As explained above, Mr. Kucinskas stole SerpApi's trade secrets when he left the company and was subject to both common-law and contractual duties to maintain the secrecy of SerpApi's confidential information in the strictest confidence. Both Mr. Kucinskas and SearchApi knew or had reason to know that SerpApi's trade secret information was acquired through these improper means as defined in Tex. Civ. Prac. & Rem. Code § 134A.002(2).

85.    Defendants additionally used SerpApi's trade secrets to develop SearchApi and at no time received SerpApi's consent to do so.

86.    At the time of Defendants' disclosure and use, they knew or had reason to know that SerpApi's trade secrets were derived through improper means—*e.g.*, Defendants improperly acquired and retained SerpApi's trade secrets and disclosed and used them in the development of SearchApi. Mr. Kucinskas is the CEO of SearchApi, and as the CEO and developer of SearchApi's products and services, Mr. Kucinskas's knowledge was also known to SearchApi.

87.    Defendants knew or had reason to know that SerpApi's trade secrets were acquired under Mr. Kucinskas's duty as a contractor to maintain the secrecy of SerpApi's trade secrets, and their knowledge of SerpApi's trade secrets were derived from Mr. Kucinskas's duty to maintain the secrecy of SerpApi's trade secrets both through common law duties of confidentiality and as expressly laid out in Mr. Kucinskas's Independent Contractor Agreement.

88.    Defendants' actions constitute "misappropriation" within the meaning of Tex. Civ. Prac. & Rem. Code § 134A.002(3).

89.    Defendants' misappropriation has harmed and continues to harm SerpApi. An injunction is necessary to prohibit Defendants from continuing to use SerpApi's trade secrets.

90.    Additionally, Defendants' misappropriation has resulted in SerpApi's actual loss and has unjustly enriched Defendants as they continue to use SerpApi's trade secrets to develop and sell products and services based on SerpApi's trade secrets. SerpApi has incurred, and will continue to incur, damages, costs, and expenses, including attorneys' fees, due to Defendants' misappropriation.

91.    Defendants' misappropriation was willful and malicious and justifies an award of exemplary damages. Mr. Kucinskas knowingly and purposefully retained SerpApi's trade secrets,

including its source code, and intentionally downloaded customer lists days before his departure from SerpApi to later target their customers. Defendants continue to use SerpApi's trade secrets with the knowledge that Defendants improperly acquired and improperly disclosed and used SerpApi's trade secrets to develop its own products, despite warnings from SerpApi to cease and desist its conduct. Defendants developed a nearly identical competing company with SerpApi's trade secrets and have taken intentional steps to target and acquire SerpApi's customers.

## **THIRD CAUSE OF ACTION**

(Breach of Contract)

92.    SerpApi re-alleges and incorporates all the above paragraphs as though fully set forth herein.

93.    SerpApi and Mr. Kucinskas were parties to a valid and enforceable Independent Contractor Agreement, executed on July 22, 2020.  *See* Ex. 3.

94.    SerpApi fully performed all conditions precedent to any performance by Mr. Kucinskas under the Independent Contractor Agreement.

95.    Pursuant to the Independent Contractor Agreement, Mr. Kucinskas agreed that he would "(i) hold all Confidential Information in strictest confidence; (ii) not use any Confidential Information except to benefit [SerpApi] or its customer; and (iii) not disclose any Confidential Information to any person or entity without the written consent of [SerpApi] . . . ." Ex. 3 at 2.

96.    Mr. Kucinskas breached the Independent Contractor Agreement by failing to comply with his duties under the contract, including his obligation to "hold all Confidential Information in strictest confidence." *Id.*  By developing SearchApi, a competing entity, from the codebase taken from SerpApi, Mr. Kucinskas used SerpApi's Confidential Information to his own benefit and to the direct detriment of SerpApi.

97.    SerpApi has suffered damages because of Mr. Kucinskas's breach of contract. In addition to the monetary damages associated with the formation of a competitor based on SerpApi's codebase, SerpApi has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Moreover, SerpApi is entitled to injunctive relief under the Independent Contractor Agreement, in which the parties agreed to equitable remedies in the event that Mr. Kucinskas were to misuse SerpApi's Confidential Information, and under common-law remedies.

## FOURTH CAUSE OF ACTION

### (Copyright Infringement)

98.    SerpApi re-alleges and incorporates all the above paragraphs as though fully set forth herein.

99.    SerpApi's computer program was registered by the U.S. Copyright Office as Registration No. TXu002515424 ("the Copyrighted Work") as indicated in Exhibit 2. It is an original, creative work, and it is copyrightable subject matter under the copyright laws of the United States.

100.    SerpApi is the owner of valid copyrights in the Copyrighted Work.

101.    SerpApi has complied in all respects with 17 U.S.C. § 101 *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in the Copyrighted Work.

102.    As alleged above, Defendants have infringed and will continue to infringe SerpApi's Copyrighted Work by, *inter alia*, using, copying, reproducing, distributing, displaying, and creating derivative works based on it without any authorization or other permission from SerpApi. Moreover, Defendants provided the infringing works to their customers knowingly and, by doing so, materially contributed to the infringing use of those works. Defendants have and had

the right and ability to stop or limit such infringing use, and chose not to do so because they profited from the use of SerpApi's Copyrighted Work. Defendants materially contributed to that use and profited from it while declining their right and ability to stop or limit it. As a result, in addition to Defendants' direct liability for their own actions, they are indirectly liable for any infringement by their customers.

103.    Upon information and belief, and as a direct and proximate result of their wrongful conduct, Defendants have obtained benefits to which they are not entitled.

104.    As a direct and proximate result of Defendants' wrongful conduct, SerpApi has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to SerpApi.

105.    SerpApi is entitled to injunctive relief enjoining Defendants, their agents and employees, and all persons acting in concert or participation with them, from engaging in any further infringement of SerpApi's Copyrighted Work.

106.    SerpApi is further entitled to recover from Defendants the damages and costs it has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by SerpApi but will be established according to proof at trial.

## **FIFTH CAUSE OF ACTION**

### (Computer Fraud and Abuse Act)

107.    SerpApi re-alleges and incorporates all the above paragraphs as though fully set forth herein.

108. SerpApi's computers and servers are involved in interstate and foreign commerce and communication and are protected computers under 18 U.S.C. § 1030(e)(2).

109. Defendants knowingly and intentionally accessed SerpApi's protected computers without authorization and in excess of any authorized access and thereby obtained information from those protected computers, namely SerpApi's proprietary source code. After Mr. Kucinskas's contractual relationship with SerpApi ended, he was no longer authorized to access SerpApi's confidential information. Yet Mr. Kucinskas knowingly and intentionally accessed SerpApi's servers (themselves protected computers), including the MongoDB server. Mr. Kucinskas's actions were undertaken in both his personal capacity and as CEO of SearchApi.

110. Defendants also knowingly and intentionally accessed SerpApi's protected computers without authorization and/or in excess of any authorized access with the specific purpose of enriching themselves financially (and doing so at SerpApi's expense) by leveraging SerpApi's proprietary source code to launch a competing business venture which ultimately caused customer confusion and financially harmed SerpApi. Defendants continuously and repeatedly accessed SerpApi's servers after Mr. Kucinskas's contractual relationship with SerpApi ended and his authorization had been revoked, including by deceptively accessing SerpApi's protected computers, copying SerpApi's proprietary source code, and using that source code to build a competitor company. On information and belief, Defendants also deceptively accessed SerpApi's servers.

111. Defendants' knowing and intentional unauthorized access and/or access in excess of any authorized access to SerpApi's protected computers has caused substantial and ongoing damage and loss to SerpApi.

112.    As a direct and proximate result of SearchApi's unlawful actions, SerpApi has sustained losses exceeding $5,000 in a one-year period. Indeed, SerpApi has sustained losses including, but not limited to, the costs of responding to Defendants' offenses and conducting a damage assessment. For instance, such costs include at least the costs to hire outside experts to assess the extent of Defendants' unauthorized accesses and the costs associated with SerpApi's own employees spending many hours analyzing, investigating, and responding to Defendants' actions.

113.    SerpApi seeks compensatory, injunctive, and other equitable relief under 18 U.S.C. § 1030(g) in an amount and scope to be proven at trial.

## DEMAND FOR JURY TRIAL

114.    Pursuant to Fed. R. Civ. P. 38, SerpApi requests a trial by jury for all causes of action, claims, or issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, SerpApi prays for the following relief:

1.    Award judgment in favor of SerpApi and against Defendants on all asserted causes of action herein;

2.    Award SerpApi a permanent injunction prohibiting Defendants, and any persons or entities acting on their behalf, from using or disclosing SerpApi's trade secrets;

3.    Award SerpApi a permanent injunction against Defendants requiring Defendants to return all stolen information, documents, and code (and all material derivative from such information) to SerpApi;

4.    Award SerpApi a permanent injunction against Defendants requiring Defendants to stop the use of and infringement of SerpApi's copyrighted materials;

5.      Award damages as described above in favor of SerpApi and against Defendants in amounts to be determined at trial, including, but not limited to, actual damages, disgorgement of profits, and unjust enrichment;

6.      Award fines pursuant to 18 U.S.C. § 1030(c) for violations of the Computer Fraud and Abuse Act;

7.      Award punitive damages in favor of SerpApi and against Defendants in an amount to be determined at trial;

8.      Award SerpApi pre-judgment and post-judgment interest, attorneys' fees and costs, and other expenses incurred in this action;

9.      Grant SerpApi any additional relief that this Court deems just and proper.

Dated: January 20, 2026                    Respectfully submitted,

                                           */s/ Kat Li*
                                           Kat Li (SBN: 24070142)
                                           kat.li@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           401 W. 4th St.
                                           Austin, TX 78701
                                           Telephone: (512) 678-9100

                                           Akshay S. Deoras (*pro hac vice* forthcoming)
                                           akshay.deoras@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           555 California Street
                                           San Francisco, CA 94104
                                           Telephone: (415) 439-1400

                                           Joshua L. Simmons (*pro hac vice* forthcoming)
                                           joshua.simmons@kirkland.com
                                           Leslie M. Schmidt (*pro hac vice* forthcoming)
                                           leslie.schmidt@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           601 Lexington Avenue
                                           New York, NY 10022
                                           Telephone: (212) 446-4800

                                           Attorneys for Plaintiff, SerpApi, LLC