# EXHIBIT 3

INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") effective as of the date last signed below, is made by and between SerpApi LLC, a Texas limited liability company ("Company") and Zilvinas Kucinskas, an individual residing in Lithuania ("Contractor"). Company and Contractor may be referred to individually as a "Party" and collectively as "Parties".

In consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

1. Services to be Performed.

Contractor agrees to perform the services of a "Senior Software Engineer" for Company ("Services") in accordance with this Agreement. Except for items agreed to between Company and Contractor, Contractor certifies that it owns, or intends to purchase at its own expense, all equipment and technology and tools required to perform the Services. Contractor further acknowledges that the Services are unique and require Contractor's personal performance. Accordingly, Contractor shall not subcontract, or allow any person or entity to perform, any or all of the Services without Company's prior written approval, which may be withheld in Company's sole discretion.

2. Payment.

In consideration for the performance of the Services, Company agrees to pay Contractor $40.00 per hour worked, provided that the hourly rate will increase to $42.50 per hour 90 days after Contractor begins performing the Services. Contractor will invoice Company bi-weekly and each invoice will include a reasonably summary of the work performed during that two week period. In addition, the Company, at Company's sole and absolute discretion, may pay Contractor a bonus pursuant to the Discretionary Cash Bonus Policy, the terms of which are set out in Exhibit A to this Agreement. The Company shall pay the Contractor no more than 7 business days after invoice reception.

3. Relationship of the Parties.

Neither this Agreement nor the relations between the Parties shall constitute or be deemed to be that of a partnership, joint venture, employer and employee or principal and agent, it being expressly understood and agreed that the Parties are, and at all times shall be and remain, independent contractors. In their capacities as independent contractors, Company and Contractor agree as follows:

i. Neither Party is the other's legal representative or agent for any purpose, and has no authority to, and shall not make any warranties or representations or create any obligations for the other Party.
ii. Company will not (i) withhold FICA (Social Security and Medicare taxes) from payments to Contractor or (ii) make FICA payments on Contractor's behalf, or (iii) make state or

<ol style="list-style-type: lower-roman" start="2">
<li>federal unemployment compensation contributions on Contractor's behalf, or (iv) withhold state or federal income tax from Contractor's payments.</li>
<li>Contractor shall pay all taxes incurred while performing Services under this Agreement, including all applicable income and payroll taxes and, if Contractor is not a corporation, self-employment (Social Security) taxes. Upon demand, Contractor shall provide Company with proof that all tax related payments have been made.</li>
<li>Contractor agrees that neither Contractor nor Contractor's employees or contract personnel are eligible to participate in any employee pension, health, vacation pay, sick pay, or other fringe benefit plan of Company.</li>
<li>Company shall not obtain_ workers' compensation insurance on behalf of Contractor or Contractor's employees. Contractor will be solely responsible for obtaining workers compensation insurance to the extent required by law and will provide Company with a certificate of workers compensation coverage upon request.</li>
<li>Contractor is customarily engaged in an independently established trade, occupation, or business of a similar nature as the Services.</li>
<li>Contractor is free to perform services for other persons or entities, subject to Contractor's compliance with the confidentiality obligations of Section 4.</li>
</ol>

4. Confidential Information.

a. Confidential Information may include but is not limited to business decisions, plans, procedures, strategies and policies, existing and planned technology, customer records, contractual terms and arrangements (including prospective purchases and sales), pricing strategies, financial and business forecasts and plans and other information affecting the value or sales of products, goods, or services of Company (collectively, the "Confidential Information"). Confidential Information expressly includes all Trade Secrets, as that term is defined in the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, et seq.  Furthermore, Confidential Information includes all information of an Company customer which is disclosed to Contractor in performing the Services. Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of Contractor or of others that Contractor knows to be under an obligation not to disclose the information.

b. Contractor agrees that Contractor, and all Contractor employees and personnel performing the Services, will: (i) hold all Confidential Information in strictest confidence; (ii) not use any Confidential Information except to benefit Company or its customer; and (iii) not disclose any Confidential Information to any person or entity without the written consent of Company, provided that written consent will not be required if Contractor is required to disclose the Confidential Information by a duly issued subpoena or other governmental order and Contractor provides Company with notice of the required disclosure promptly upon Contractor's receipt of the order.

5. Equitable Remedies.

Contractor agrees that it would be impossible or inadequate to measure and calculate Company's damages from any breach of the covenants set forth in Section 4. Accordingly,

Contractor agrees that if Contractor or a Contractor employee or agent breaches Section 4, Company will have available, in addition to any other right or remedy available by this Agreement or applicable law, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any provision of this Agreement. No bond or other security shall be required in obtaining such equitable relief, and Contractor consents to the issuance of such injunction and to the ordering of specific performance.

6. Representations and Warranties by Contractor.

Contractor warrants, represents, covenants, and agrees that Contractor: (i) has the requisite skill and training to perform the Services contemplated by this Agreement; (ii) is under no contract, non-compete, confidentiality, non-disclosure or similar restriction with a third party that would interfere with the provision of the Services to Company, or that would render the provision of the Services a violation of law or subject Company to the possibility of damages; and (iii) will perform the Services in compliance with the terms of this Agreement and applicable law.

7. Terminating the Agreement.

Either Party may terminate this Agreement with or without cause at any time by giving not less than fourteen (14) days' written notice of the intent to terminate.

8. Work Product.

The product of all work performed by Contractor under this Agreement ("Work Product"), including without limitation all notes, reports, documentation, drawings, computer programs, inventions, creations, works, models, work-in-progress and deliverables will be the sole property of Company, and Contractor assigns to Company all right, title and interest therein, including but not limited to all audiovisual, literary, moral rights and other copyrights, patent rights, trade secret rights and other proprietary rights therein. Contractor retains no right to use the Work Product and agrees not to challenge the validity of Company's ownership in the Work Product.

9. Venue/Choice of law.

Any claim arising under this Agreement shall be brought in the courts of the State of Texas and be governed by the application of Texas law without regard to its conflict of law principles. Both Parties waive their right to trial by jury to the maximum extent permitted by law.

10. Survival.

In the event of the expiration or termination of this Agreement, Sections 8, 9, and 10 shall survive and continue in full effect. In the event of the expiration or termination of this Agreement, Sections 4 and 5 shall survive and continue in full effect for a period of three (3) years.



11. Force majeure.

Notwithstanding anything to the contrary contained herein, neither Party shall be liable for any delays or failures in performance resulting from acts beyond its reasonable control including, without limitation, acts of God, terrorist acts, shortage of supply, breakdowns or malfunctions, interruptions or malfunction of computer facilities, or loss of data due to power failures or mechanical difficulties with information storage or retrieval systems, labor difficulties, war, or civil unrest.

12. Notices.

Notices or other communication under this Agreement will be in writing and will be effective when delivered personally or by overnight courier, or mailed, postage prepaid, by certified or registered mail to each Party at the address set forth above (or to such other address as either Party may from time to time provide the other). Notices may also be delivered by email and will be deemed delivered on the first business day following transmission.

13. Assignment.

Neither Party may assign, delegate or otherwise transfer any of its rights or obligation under this Agreement without the other Party's prior written approval; provided that Company may assign this Agreement, in whole or in part, or any of its rights hereunder to an affiliate or successor without the written consent of or notification to Contractor.

14. Preparation of Agreement.

There will be no presumption against either Party on the ground that such Party was responsible for preparing all or any part of this agreement.

15. Entire agreement/Modification/Waiver.

This Agreement represents the entire agreement between the Parties concerning the subject matter hereof. This Agreement may not be modified except in a writing signed by both Parties, and it will be binding on and will inure to the benefit of the Parties hereto, and their heirs, administrators, successors, and permitted assigns. Any waiver must be in writing and signed by the Party alleged to have waived such provision, and any single waiver will not operate to waive subsequent or other defaults. The unenforceability of any provision of this Agreement will not affect the remaining provisions or any portion(s) thereof.

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound, have each caused to be affixed hereto its hand and seal as of the date first written above.

COMPANY

By: __SerpApi, LLC__

Name: __Julien Khaleghy__

Title: __CEO and Founder__

Address: __5540 N Lamar Blvd #12, Austin, TX, 78756, United States__

Date: __07/22/2020__

CONTRACTOR

By: __ŽILVINAS KUČINSKAS__

Name: __ŽILVINAS KUČINSKAS__

Title: __SENIOR SOFTWARE ENGINEER__

Address: __V. ŽALAKEVIČIAUS G. 4C-19, VILNIUS, LITHUANIA, LT-10111__

Date: __2020-07-22__

## EXHIBIT A

**Zilvinas Kucinskas Cash Bonus Plan**

(a) 0.30% of SerpApi, LLC profit every quarter starting the next quarter after one full quarter working full time at SerpApi, LLC distributed according and following the conditions of the SerpApi DISCRETIONARY CASH BONUS POLICY.

(b) 0.30% of SerpApi, LLC sale in case of a SerpApi, LLC sale vested linearly on 4 years with a 1 year cliff working full time at SerpApi, LLC distributed according and following the conditions of the SerpApi DISCRETIONARY CASH BONUS POLICY. SerpApi, LLC will still pay a cash bonus if a SerpApi, LLC sale occurs within 6 months of Contractor termination at the amount vested at the date of the termination.

DISCRETIONARY CASH BONUS POLICY

SERPAPI, LLC

From time to time, SerpApi, LLC ("Company") may pay a cash bonus ("Bonus") to employees and contractors. I understand that it is the intent of the Company that Bonuses reward individuals who contribute to the Company's success through their hard work, but that the payment of any Bonus to me is entirely at the discretion of the Company as described in this Policy. Accordingly, I acknowledge the following:

1.     DETERMINATION OF BONUS

Within a reasonable time after the close of each fiscal quarter, the Company will determine if a Bonus will be paid to employees and contractors. Whether a bonus will be paid, the amount of any Bonus, and the individuals who will receive a Bonus will be determined by the Company in its sole and absolute discretion. I understand that no history or pattern of paying Bonuses to me in prior periods will be construed as: i) a guarantee or obligation of the Company to pay any Bonus to me in the future even if the Company experiences similar or better financial and operating results; or ii) a course of dealing regarding the methodology for determining a bonus or the allocation of any Bonus among employees and contractors.

2. PAYMENT OF BONUS

Each Bonus, if any, shall be paid in cash in a single lump sum as soon as administratively practicable, but in no event later than two and one-half months after the end of a fiscal quarter. The Company shall withhold all required taxes from a Bonus, including any federal, state, local or other taxes. Any Bonus shall be paid solely from the general assets of the Company, and no amount of cash or assets shall be funded, set aside or otherwise segregated for the payment of Bonuses.

All Bonuses are discretionary and therefore are not included in my regular rate of pay subject to overtime under Labor Code Section 7(e) (3)(a).

3. NO EFFECT ON EMPLOYMENT OR INDEPENDENT CONTRACTOR RELATIONSHIP

If I am an employee, nothing in the Policy or my acknowledgement herein shall be construed as an employment contract and my employment with the Company is and will remain on an at-will basis only. The Company expressly reserves the right, which may be exercised at any time, to terminate or modify my employment with or without cause, and to treat me without regard to the effect that such treatment might have upon the payment of a Bonus to me.

If I am a Contractor, nothing in this Policy or my acknowledgement shall be construed to be a modification or amendment to any term or condition of my contract, including but not limited to the terms and conditions relating to compensation, term and termination of any such contract.

4. SECTION 409A NOT APPLICABLE

It is intended that payments of Bonuses under the Policy qualify as short-term deferrals exempt from the requirements of Section 409A of the Internal Revenue Code. In the event that any Bonus does not qualify for treatment as an exempt short-term deferral, it is intended that such amount will be paid in a manner that satisfies the requirements of Section 409A of the Code. The Policy shall be interpreted and construed accordingly.

5. AMENDMENT AND TERMINATION

The Company may amend or terminate the Policy, or any part thereof, at any time and for any reason without notice to me. Notwithstanding the foregoing, no amendment or termination of the Policy shall adversely affect my rights to a Bonus declared by the Company prior to such amendment or termination.

6. LEGAL CONSTRUCTION

In the event any provision of the Policy shall be held illegal or invalid for any reason, the illegality or invalidity shall not affect the remaining parts of the Policy, and the Policy shall be construed and enforced as if the illegal or invalid provision had not been included. The Policy and all awards shall be construed in accordance with and governed by the laws of the State of Texas, without regard to their conflict-of-law provisions.

By signing below, I hereby acknowledge that I have completely read and fully understand the Discretionary Cash Bonus Policy adopted by SerpApi, LLC ("Company") on _____, 2020.

ACKNOWLEDGED AND AGREED TO:

By: ŽILVINAS KUČINSKAS

Name: ŽILVINAS KUČINSKAS

Title: SENIOR SOFTWARE ENGINEER

Address: V. ZALAKEVIČIAUS G. 4C-19, VILNIUS, LITHUANIA, LT-10111

Date: 2020-07-22

## Zilvinas Kucinskas Expense Reimbursements

**(a)** Macbook up to $5,000 USD on 12 monthly installments

**(b)** Coworking space up to $400 USD per month