# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**FILED**

April 21, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_

DEPUTY

|  |  |  |
|---|---|---|
| SERPAPI, LLC,<br>        *Plaintiff,* | §<br>§<br>§<br>§ |  |
| v. | §<br>§ | Case No. 1:26-CV-00143 |
| ZILVINAS KUCINSKAS and<br>SEARCHAPI LLC,<br>        *Defendant.* | §<br>§<br>§<br>§ |  |

**DEFENDANTS ZILVINAS KUCINSKAS AND
SEARCHAPI, LLC'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   FACTS ....................................................................................................... 2

III.  LAW .......................................................................................................... 4

     A. FRCP 12(b)(2) - Lack of Personal Jurisdiction ................................. 4

     B. FRCP 12(b)(3) - Venue ..................................................................... 5

     C. FRCP 12(b)(6) - Failure to State a Claim ......................................... 6

     D. Defend Trade Secret Act .................................................................... 6

     E. Texas Uniform Trade Secrets Act ...................................................... 7

     F. Breach of Contract ............................................................................. 8

     G. Copyright Infringement ...................................................................... 8

     H. Computer Fraud and Abuse Act ......................................................... 9

IV.   ARGUMENT .......................................................................................... 10

     A. The Court Lacks Personal Jurisdiction Over SearchApi (Rule 12(b)(2)) ........................ 10

     B. Venue Is Improper in This District (Rule 12(b)(3)) ........................... 12

     C. Plaintiff's Complaint Fails to State a Claim (Rule 12(b)(6)) ............. 13

         1. Trade Secrets (DTSA/TUTSA) .................................................. 13

             i.     Plaintiff Has Failed to Plausibly Identify Its Purported Trade Secret ..................................13

             ii.    Plaintiff Fails to Plausibly Show It Employs Reasonable Measures ...........17

         2. Breach of Contract ..................................................................... 21

         3. Copyright Infringement ............................................................. 22

         4. Computer Fraud (CFAA) ........................................................... 23

V.    CONCLUSION ....................................................................................... 26

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                              **Page**

*Adams v. Budget Truck Rental, LLC*,
   2020 U.S. Dist. LEXIS 223746 (W.D. Tex. 2020) ....................................................................8

*Apple Barrel Prods., Inc. v. Beard*,
   730 F.2d 384, 387 (5th Cir. 1984)...........................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570 (2007).........................................................................................................6

*BCOWW Holdings, LLC v. Collins*,
   2017 U.S. Dist. LEXIS 142618 (W.D. Tex. 2017) ..................................................................8

*Breeders v. Lewis Tatum in His Pers.*,
   2020 U.S. Dist. LEXIS 274327 (W.D. Tex. 2020) ..................................................................5

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................................................5, 11

*CAE Integrated, L.L.C. v. Moov Techs., Inc.*,
   44 F.4th 257, 262 (5th Cir. 2022) .......................................................................................7, 13

*Carmona v. Leo Ship Mgmt., Inc.*,
   924 F.3d 190 (5th Cir. 2019) ..................................................................................................4

*Citizens Info. Assocs., LLC v. Justmugshots.com*,
   2013 U.S. Dist. LEXIS 194547 (W.D. Tex. 2013) ...............................................................10

*D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*,
   754 F.2d 542 (5th Cir. 1985) ..................................................................................................4

*Due Process Clause of the Fourteenth Amendment. Stroman Realty, Inc. v. Antt*,
   528 F.3d 382 (5th Cir. 2008) ..................................................................................................4

*Education Management Services, LLC v. Tracey*,
   102 F. Supp. 3d 906 (W.D. Tex. 2015) .................................................................................16

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
   26 F.3d 1335 (5th Cir. 1994) ..................................................................................................9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ...........................................................................................................8

*Frank v. P N K (Lake Charles) L.L.C.*,
  947 F.3d 331, 336 (5th Cir. 2020) ....................................................................................4

*GE Betz, Inc. v. Moffitt-Johnston*
  885 F.3d 318, 325 (5th Cir. 2018)......................................................................................7

*Gen. Universal Sys. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) .............................................................................................9

*GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*,
  836 F.3d 477 (5th Cir. 2016) .............................................................................................8

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021) .........................................................................................................8, 22

*Hanson v. Denckla*,
  357 U.S. 235 (1958) .....................................................................................................5, 11

*Heilrayne v. Univ. of Tex. at Austin*,
  No. 1:25-cv-640-DAE, slip op. at 8 (W.D. Tex. Jan. 27, 2026)........................................6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ...........................................................................................................4

*HT Res., Inc. v. Ralston*,
  2017 U.S. Dist. LEXIS 219012 (W.D. Tex. 2017) ............................................................7

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) .............................................................................................6

*MDSave, Inc. v. Sesame, Inc.*,
  2023 U.S. Dist. LEXIS 9772 (W.D. Tex. 2023) ...........................................................4, 5

*Moody v. Morris*,
  608 F. Supp. 2d 575 (S.D.N.Y. 2009) ..............................................................................22

*Patterson v. Aker Sols. Inc.*,
  826 F.3d 231 (5th Cir. 2016) .............................................................................................4

*Pie Dev., L.L.C. v. Pie Ins. Holdings, Inc.*,
  2023 U.S. App. LEXIS 7575 *6-7 (5th Cir. 2023) ............................................................7

iv

*Rush v. Savchuk*,
  444 U.S. 320 (1980) ........................................................................................................11

*Stern v. Does*,
  978 F. Supp. 2d 1031 (C.D. Cal. 2011) .........................................................................22

*Stern v. Weinstein*,
  512 F. App'x 701 (9th Cir. 2013) ...................................................................................22

*Szabo v. Errisson*,
  68 F.3d 940 (5th Cir. 1995) ..............................................................................................9

*Time, Inc. v. Manning*,
  366 F.2d 690, 697 (5th Cir. 1966) ....................................................................................5

*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061 (5th Cir. 1994) ............................................................................................6

*Under Innova Hospitals San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*,
  892 F.3d 719 (5th Cir. 2018) ..........................................................................................15

*Van Buren v. United States*,
  593 U.S. 374 (2021) ...........................................................................................10, 24, 25

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................................................11

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ............................................................................................6

*Wallace v. Lively*,
  809 F. Supp. 3d 490 (W.D. Tex. 2025) .......................................................................4, 11

*Wells v. Minnesota Life Ins. Co.*,
  885 F.3d 885, 889 (5th Cir. 2018) ....................................................................................8

**Statutes**

17 U.S.C. § 102 ..............................................................................................................8, 22

17 U.S.C. § 411 ...................................................................................................................8

17 U.S.C. § 412 ...................................................................................................................8

18 U.S.C. § 1030 ..................................................................................................9, 10, 24, 25

18 U.S.C. § 1839 ....................................................................................................13, 17, 18

28 U.S.C. § 1391 ................................................................................................5, 12

28 U.S.C. § 1400 ................................................................................................5, 12

37 C.F.R. § 202.1 ................................................................................................8, 22

**Other**

*Twenty Years of Web Scraping and the Computer Fraud and Abuse Act,*
   24 B.U. J. Sci. & Tech. L. 372 (2018) ........................................................1

## I.   **INTRODUCTION**

Defendants Zilvinas Kucinskas and SearchApi LLC ("SearchApi") (collectively "Defendants") file this motion to dismiss Plaintiff SerpApi, LLC's ("SerpApi" or "Plaintiff") Complaint (D.E. [1]) under Fed. R. Civ. P. ("Rule") 12(b)(2) for lack of personal jurisdiction as to SearchApi, Rule 12(b)(3) for improper venue as to SearchApi, and Rule 12(b)(6) for failure to state a claim as to both Defendants. In support of this motion, Defendants submit the Declarations of Defendant Zilvinas Kucinskas ("Kucinskas Decl."), software expert Dr. Paul Martin, Ph.D. ("Martin Decl."), and undersigned counsel Jean-Marc Zimmerman ("Zimmerman Decl."), all of which are included in Appendix A submitted herewith.[1]



. Kucinskas Decl., ¶ 19.

. *Id*. at ¶ 20. This case is about a larger business – SerpApi - seeking to stifle a smaller competing business started by a former independent contractor whose success is threatening Plaintiff's dominance in the web scraping field.[2]

Plaintiff's personal-jurisdiction and venue theories are inadequate. They rest mainly on two things: (1) vague "effects" allegations and conclusory assertions, made only "on information

---

[1] Defendants submit the Declaration of Dr. Martin to demonstrate that the allegations in Plaintiff's Complaint and the Declaration of its expert Matthew Schroeder (D.E. [1-1, 1-2]) are conclusory and do not plausibly show copying, misappropriation, or unauthorized access.

[2] Web scraping generally refers to the retrieval of content posted on the World Wide Web through the use of a program other than a web browser or an application programming interface (API). Andrew Sellars, *Twenty Years of Web Scraping and the Computer Fraud and Abuse Act*, 24 B.U. J. Sci. & Tech. L. 372, 373 (2018).

and belief," that SearchApi does business in Texas and has customers operating there; and (2) a forum-selection clause in an expired Independent Contractor Agreement ("ICA") between Plaintiff and Mr. Kucinskas. That is not enough to bring SearchApi into this Court. SearchApi does not do business in Texas, has no customers here, and was never a party to the ICA.

As demonstrated below, Plaintiff has failed to provide any substantive evidence to render its claims plausible. That is because Defendants have done nothing wrong. Plaintiff's claims arise from Defendants' alleged access to Plaintiff's computer systems and alleged copying of its software and website elements. However, Plaintiff has not shown that Defendants copied anything from Plaintiff. Moreover, Plaintiff does not identify its alleged trade secrets with the particularity required to state trade secret misappropriation claims; pleads its copyright infringement claim in conclusory fashion without identifying the protectable expression that was supposedly copied; pleads its computer fraud claim premised on supposed "improper access" to its computers without plausibly alleging the statutory "without authorization" element or the required "loss"/"damage"; and pleads its breach of contract claim without demonstrating that Defendants used Plaintiff's supposedly confidential information, and without explaining how Plaintiff has been damaged or how SearchApi is liable for such a claim when it was not a signatory to the ICA.

Dismissal of Plaintiff's claims is therefore warranted.

## II.    FACTS

Mr. Kucinskas worked as an independent contractor for Plaintiff from July 22, 2020 to July 23, 2021. Kucinskas Decl., ¶ 2. Section 10 of Mr. Kucinskas's ICA expressly provides that Sections 4 (Confidentiality) and 5 (Equitable Remedies) survive only for three years after termination. *Id.* at ¶ 3. Because Mr. Kucinskas left on July 23, 2021, those provisions expired in

2

July 2024—about 18 months before this lawsuit was filed. That is important because SerpApi's breach of contract claim relies on confidentiality obligations that were no longer in effect when suit was brought. It also matters to the trade secret claims because SerpApi chose to let its contractual confidentiality protections expire after three years.

On July 9, 2022, Mr. Kucinskas started SearchApi, a Wyoming LLC business with a principal place of business in New York City and publicly launched the business on May 5, 2023. Kucinskas Decl., ¶ 14.

On July 26, 2025, Plaintiff sent Mr. Kucinskas an email accusing him of using SerpApi's confidential information to create SearchApi. *Id*. at ¶ 16. Undersigned counsel responded in a letter dated September 2, 2025, denying Plaintiff's allegations of wrongful conduct. Zimmerman Decl., ¶ 2. From September through December 2025, undersigned counsel exchanged ten letters with Plaintiff's counsel to try and resolve the dispute. *Id*. at ¶ 3. In these letters Defendants provided Plaintiff with detailed technical explanations showing why Plaintiff's claims were unfounded and requested evidence supporting its allegations of wrongdoing which Plaintiff failed to provide then, and which as shown below it has failed to plausibly allege in its Complaint. *Id*. at ¶ 6. ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████ an ongoing public relations campaign accusing Defendants of dishonesty and theft. Kucinskas Decl., ¶¶ 19, 22.

Before filing this lawsuit on January 20, 2026, Plaintiff also interfered with SearchApi's business. It contacted certain open-source integration maintainers, including n8n, falsely accused

SearchApi of theft, paid to have SearchApi integrations removed, and offered financial incentives to persuade those maintainers to switch to SerpApi. *Id.* at ¶ 21.

### III. LAW

#### A. FRCP 12(b)(2) - Lack of Personal Jurisdiction

Rule 12(b)(2) requires dismissal when the court lacks personal jurisdiction over the defendant. *Wallace v. Lively*, 809 F. Supp. 3d 490, 495-96 (W.D. Tex. 2025); *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016).

A court has personal jurisdiction over a nonresident defendant only if the forum state's long-arm statute reaches that defendant and the exercise of jurisdiction satisfies due process. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). In Texas, the long-arm statute reaches as far as the Constitution permits, so the inquiry turns solely on whether jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

Due process requires that the nonresident defendant have minimum contacts with the forum based on its own affirmative conduct, and that requiring the defendant to litigate there be fair and reasonable. *MDSave, Inc. v. Sesame, Inc.*, 2023 U.S. Dist. LEXIS 9772, at *7-9 (W.D. Tex. 2023); *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985). Minimum contacts may support either general jurisdiction or specific jurisdiction. *MDSave*, 2023 U.S. Dist. LEXIS 9772, at *8, quoting *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020).

Specific jurisdiction exists only when the plaintiff's claim arises out of or relates to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). To establish specific jurisdiction, the defendant must have

4

purposefully directed its activities at the forum's residents, and the plaintiff's claims must arise from or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). In other words, there must be some act by which the defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### B.  **FRCP 12(b)(3) - Venue**

Rule 12(b)(3) requires a court to dismiss a claim if venue is improper in the judicial district where the claim was brought.

Under the federal general venue statute, 28 U.S.C. § 1391(b)(2), a civil action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred. *MDSave, Inc. v. Sesame, Inc., 2023 U.S. Dist. LEXIS 9772*, at *20-21 (W.D. Tex. 2023). *See Breeders v. Lewis Tatum in His Pers.*, 2020 U.S. Dist. LEXIS 274327, at *4-5 (W.D. Tex. 2020) (Dismissed for improper venue under § 1391 because no defendant resided in the Western District of Texas and plaintiffs alleged no facts showing that a substantial part of the events occurred there).

Under 28 U.S.C. § 1400(a), an action for copyright infringement may be brought "in the district in which the defendant or his agent resides or may be found." *Time, Inc. v. Manning*, 366 F.2d 690, 697 (5th Cir. 1966) (noting that for copyright infringement claims, 28 U.S.C. § 1400(a), not 28 U.S.C. § 1391(b), governs venue). [3]

---

[3] Paragraph 9 of Mr. Kucinskas's ICA provides that venue is proper in this district for disputes arising from that agreement. However, that provision does not apply to SearchApi who was not a signatory to the ICA.

## C. **FRCP 12(b)(6) - Failure to State a Claim**

In "deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court 'accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. See *Heilrayne v. Univ. of Tex. at Austin*, No. 1:25-cv-640-DAE, slip op. at 8 (W.D. Tex. Jan. 27, 2026).

A plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). *See Heilrayne*, slip op. at 8-9.

## D. **Defend Trade Secret Act**

The Defend Trade Secret Act ("DTSA") is a federal law that allows trade secret owners to sue in federal court for misappropriation of trade secrets. *See* 18 U.S.C. § 1836(b)(1). To succeed on this claim, a plaintiff must demonstrate that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CAE*

6

*Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)).

The DTSA defines trade secrets as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including . . . programs, or codes . . . not being generally known . . ." See 18 U.S.C. § 1839(3).

The protections afforded by the DTSA apply only when the owner of the alleged trade secret has taken reasonable measures under the circumstances to keep the information secret. *See* 18 U.S.C. § 1839(3)(A). *See Pie Dev., L.L.C. v. Pie Ins. Holdings, Inc.*, 2023 U.S. App. LEXIS 7575 *6-7 (5th Cir. 2023) where Court found waiting more than two years to take measures to protect purported trade secret was not reasonable.

### E.  <u>Texas Uniform Trade Secrets Act</u>

The Texas Uniform Trade Secrets Act ("TUTSA") is a Texas statute that allows a trade secret owner to bring a state-law claim for misappropriation. See Tex. Civ. Prac. & Rem. Code § 134A.002. To prevail, a plaintiff must show that: (1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or by improper means; and (3) the defendant used the trade secret without the plaintiff's authorization. *See CAE Integrated*, 44 F.4th at 262; *see also HT Res., Inc. v. Ralston*, 2017 U.S. Dist. LEXIS 219012, at *21 (W.D. Tex. 2017).

Under the TUTSA, "business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers . . ." qualify as a trade secret if its owner "has taken reasonable measures" to keep the information secret and "the information derives independent economic value" from

not being "generally" known. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A) and (B). *See GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016) (citing *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009)).

What constitutes "reasonable measures" depends on the nature of the information and the circumstances in which it is used. *See BCOWW Holdings, LLC v. Collins*, 2017 U.S. Dist. LEXIS 142618, at *42-44 (W.D. Tex. 2017). Where a company handles information carelessly, trade secret protection may be lost. *Id.*

### F. Breach of Contract

To prevail on a breach of contract claim under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Adams v. Budget Truck Rental, LLC*, 2020 U.S. Dist. LEXIS 223746, at *8 (W.D. Tex. 2020) citing *Wells v. Minnesota Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018).

### G. Copyright Infringement

"Words and short phrases such as names, titles, and slogans" are not copyrightable. 37 C.F.R. § 202.1(a). Similarly, functional ideas are not copyrightable, while the expression may be protectable. 17 U.S.C. § 102(b). *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 12-13 (2021). And, to claim copyright protection in a compilation, the compilation must be assessed as a whole, not by isolated field names or code fragments. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 356 (1991).[4]

---

[4] Under 17 U.S.C. § 411(a), registration is generally required before filing a copyright infringement action. Under 17 U.S.C. § 412, registration is also generally required before the infringement begins in order to recover statutory damages and attorney's fees, subject to the statute's three-month post-publication exception.

To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original. *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995) (citing *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 387 (5th Cir. 1984)). To establish actionable copying, a plaintiff must show "that the allegedly infringing work is substantially similar to protectable elements of the infringed work." *Gen. Universal*, 379 F.3d at 142. A "side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Id*.

To assist a factfinder in conducting this comparison, this Court has utilized the "abstraction-filtration-comparison" test. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1342 (5th Cir. 1994). First, the factfinder should break down the allegedly copied program into its different structural levels. *Id*. at 1342-43. Second, the factfinder should remove any elements that are not protected, such as hardware and software standards, manufacturer design standards, industry practices, market demands, and common programming methods. *Id*. at 1343. Third, the factfinder should compare the remaining protectable elements to the accused program to decide whether the defendant copied a substantial part of the plaintiff's protected work. *Id*.

## H.  Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act ("CFAA") is a federal statute that allows a civil claim against a person who intentionally accesses a computer without authorization, or exceeds authorized access, and thereby obtains information from the computer. 18 U.S.C. § 1030(a)(2)(C), (g); *Van Buren v. United States*, 593 U.S. 374, 389, 391 (2021); *Citizens Info. Assocs., LLC v. Justmugshots.com*, 2013 U.S. Dist. LEXIS 194547, at *8-9 (W.D. Tex. 2013).

A person does not violate the CFAA by using valid, active credentials to access a computer, because that person is authorized to enter the system—in other words, the "gates" are up. *Van Buren*, 593 U.S. at 389-90. Nor is there a violation unless the person obtains information that he or she was not entitled to obtain. 18 U.S.C. § 1030(a)(2)(C), (e)(6).

The CFAA also prohibits intentionally accessing a protected computer without authorization and thereby causing damage and loss. 18 U.S.C. § 1030(a)(5)(C). To bring a civil claim, the plaintiff must allege a loss of at least $5,000 during a one-year period. 18 U.S.C. § 1030(c)(4)(A)(i)(I); *Citizens Info.*, 2013 U.S. Dist. LEXIS 194547, at *9.

## IV.    ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over SearchApi (Rule 12(b)(2))

SerpApi's allegations against SearchApi rest on 1) conclusory assertions that SearchApi "purposefully directed" activities at Texas and "on information and belief" does business in Texas and has customers with substantial Texas operations, and 2) agency/imputation based on Mr. Kucinskas's role as SearchApi's CEO and alleged ratification. However, these allegations are unsupported by any facts and are therefore insufficient to establish personal jurisdiction by this Court.

SearchApi has no contacts with Texas and did not purposefully avail itself of the privilege of doing business there. The Complaint alleges no conduct by SearchApi in Texas. Instead, it points only to non-Texas infrastructure, such as a MongoDB server in New Jersey and foreign IP addresses in Lithuania and Latvia.

To establish personal jurisdiction, SerpApi must plead facts showing that SearchApi purposefully directed suit-related conduct at Texas. *Burger King*, 471 U.S. at 472-73; *Hanson*, 357 U.S. at 253. The Complaint does not do that. It is not enough that SerpApi, a Texas plaintiff,

10

claims it felt harm in Texas. Plaintiff cannot be the only link between SearchApi and Texas. It is

SearchApi's own conduct that must create the necessary connection with the forum state. *Walden*

*v. Fiore*, 571 U.S. 277, 285 (2014). No such connection exists here.

This Court applied that exact rule in *Wallace*, 809 F. Supp. 3d at 505 dismissing for lack

of personal jurisdiction where a Texas-based plaintiff sued a non-resident defendant on the basis

of harm allegedly felt in Texas. The reasoning in *Wallace* controls here: SerpApi cannot

manufacture personal jurisdiction over SearchApi — a Wyoming LLC with its principal place of

business in New York — by pointing to its own Texas residence.

Most importantly, the Complaint does not identify what SearchApi supposedly did in

Texas, when it happened, who did it, or how any alleged Texas contact relates to the asserted

claims. It omits those facts because they do not exist.

SearchApi was formed on July 9, 2022, more than eleven months after the ICA

terminated on July 23, 2021. A nonexistent entity cannot have purposefully directed conduct

toward the forum, and ICA-era contacts cannot be retroactively imputed to a separately formed

LLC absent an alter ego theory that Plaintiff has not pleaded. *Rush v. Savchuk*, 444 U.S. 320, 332

(1980).

Likewise, Plaintiff has failed to plead any facts showing that Mr. Kucinskas acted

wrongfully whether on his own or on behalf of SearchApi or ratified any wrongful conduct by

SearchApi to support its agency/imputation theory-based claim.

Mr. Kucinskas's decision to start a competing business after leaving SerpApi does not

support personal jurisdiction over SearchApi. His ICA expressly allowed him to work for others,

stating in Section 3.vii. that the "Contractor is free to perform services for other persons or

entities," so long as he complied with Section 4's confidentiality obligations. Plaintiff has not

11

shown that Mr. Kucinskas or SearchApi used any SerpApi confidential information after the ICA ended on July 23, 2021. Without such facts, there is no basis to exercise personal jurisdiction over SearchApi.

Therefore, because this Court does not have personal jurisdiction over SearchApi, dismissal of SerpApi's Complaint under Rule 12(b)(2) is warranted.

### B. <u>Venue Is Improper in This District (Rule 12(b)(3))</u>

Plaintiff claims venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) for its DTSA and CFAA claims. But the Complaint alleges that the key events pertaining to those claims occurred outside Texas—for example, access to a MongoDB server located in New Jersey and activity tied to foreign IP locations in Lithuania and Latvia. Because the operative events were not centered in this District, venue is therefore not proper here under § 1391(b)(2). The joinder of non-resident alien Mr. Kucinskas "shall be disregarded in determining where the action may be brought with respect to [SearchApi]." 28 U.S.C. § 1391(c)(3).

Plaintiff claims venue is proper in the Western District of Texas under 28 U.S.C. § 1400(a) for its copyright claim. Plaintiff's copyright venue theory is expressly tied to the claim that SearchApi is subject to personal jurisdiction in this District and therefore "may be found" here. However, as personal jurisdiction is lacking over SearchApi in this district, venue is therefore improper here for the copyright claim.

Therefore, because venue is improper in this District, dismissal of SerpApi's Complaint under Rule 12(b)(3) is warranted.

C. **Plaintiff's Complaint Fails to State a Claim (Rule 12(b)(6))**

1. **Trade Secrets (DTSA/TUTSA)**

    i.    **Plaintiff Has Failed to Plausibly Identify Its Purported Trade Secret**

Plaintiff does not state a plausible trade secret claim under either the DTSA or the TUTSA. Setting aside Plaintiff's separate allegation about a supposed customer list, the Complaint does not identify any protectable trade secret in the software-based web-scraping product at issue with the required specificity. 18 U.S.C. § 1839(3)(A) and (B), Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A) and (B). *See DeWolff, Boberg & Assocs., Inc. v. Pethick, No. 24-10375,* slip op. at 6-7 (5th Cir. Apr. 3, 2025) ("DB&A has not identified what specific information within its database constitutes a trade secret… nowhere is that information identified with specificity"). Instead, Plaintiff points to information that is public, functional, or standard in the industry, which is not protectable as a trade secret. *See* 18 U.S.C. § 1839(3)(B); Tex. Civ. Prac. & Rem. Code § 134A.002(6)(B); *CAE, Inc.*, 44 F.4th at 263.

A plaintiff must identify the specific trade secret, explain how it was improperly acquired, and allege how it was used without authorization. *CAE*, 44 F.4th at 262. Plaintiff does not do so. In fact, Plaintiff's own expert concedes that "[i]t is unclear from the logging which fields Mr. Kucinskas downloaded." Schroeder Decl., ¶ 11. Nor has Plaintiff alleged what harm supposedly resulted.

Even if Plaintiff had identified its alleged trade secrets with enough specificity, the Complaint still does not plausibly allege that Defendants copied them. Instead, Plaintiff asks the Court to infer misappropriation from alleged similarities between the parties' products, such as "mirror image" features (Complaint ¶ 2) and "identical bugs" (Complaint ¶ 5). But similarity alone is not enough. Especially when the similarity results from the information at issue, e.g., a

13

URL Fragment, not being proprietary to a single company but rather being commonly used by many companies, or is the result of a deliberate engineering choice, e.g., "eventual consistency", that is commonly used. Martin Decl., ¶¶ 52-54 (showing that the example fragment "#api-examples" appears in hundreds of files across dozens of unrelated public third-party repositories on GitHub). Martin Decl., ¶¶ 91-94 (negative-balance behavior is an "intentional design choice" implementing optimistic concurrency with eventual consistency[5], not the kind of "unintentional error in coding or logic" that constitutes a bug).

Plaintiff does not allege facts plausibly showing that Defendants copied any proprietary information from SerpApi's web-scraping product. The Complaint does not plausibly allege facts showing that SearchApi's public front-end source code copied SerpApi's code. Plaintiff's forensic investigator only examined access logs — he did not compare SearchApi's source code to SerpApi's, nor did he purport to. Schroeder Decl., ¶¶ 6-7. It also does not allege facts showing that the URL fragments or API terminology Plaintiff labels as proprietary are unique to SerpApi, rather than commonly used by unrelated public repositories, i.e., third-parties— including the parameters "location" and "uule" that independent search-API competitors (Autom, Novada, Scrapeless, RapidAPI) openly document on their own developer sites. Martin Decl. ¶¶ 55-58.

The Complaint does not plausibly allege facts showing that Defendants copied SerpApi's Easy Integration section, *see* Martin Decl. ¶¶ 63-67 (the two products use different libraries —

---

[5] Negative balances in SearchApi's Account API result from optimistic concurrency with eventual consistency — a deliberate trade-off between strict consistency and throughput that is standard practice in high-throughput distributed systems – and not copying of a SerpApi bug. Martin Decl., ¶¶ 91-94. SearchApi's pen-test report independently confirms this design choice. Ex. 3 (Oneleet Q1 2026 Pentest Report); Kucinskas Decl. ¶ 15.

SerpApi's proprietary serpapi client vs. the generic requests library — and different parameter sets), or its API Playground, *see* Martin Decl. ¶¶ 68-72 (documenting that interactive tools with structured JSON output have been publicly available since Yahoo Search BOSS's July 2008 release, nine years before SerpApi, and are a routine industry feature today).

The Complaint does not plausibly allege facts showing that Defendants copied SerpApi's Google Flights API code, *see* Martin Decl. ¶¶ 78-79 (identifying field-structure differences — SerpApi uses only "time" while SearchApi uses both "date" and "time"), or its price naming or model names, *see* Martin Decl. ¶¶ 95-100 (documenting that pricing plan tier names like "Starter," "Developer," "Production," and "BigData" are routinely and commonly used across competitors including SerpWow, Serper, and OxyLabs).

In addition, the Complaint does not plausibly allege facts showing that Defendants accessed SerpApi's backend source code after Mr. Kucinskas left SerpApi. And it does not allege facts making it plausible that APIs released after his departure were copied — including APIs whose source code did not yet exist on SerpApi's systems when Mr. Kucinskas's contractor relationship ended on July 23, 2021 (Complaint, ¶ 32). Martin Decl., ¶¶ 81-84. In any event, Mr. Kucinskas did not export, download, copy, transfer, reproduce, or otherwise obtain SerpApi's non-public source code, and SearchApi's source code was developed independently from SerpApi's proprietary code base. Kucinskas Decl. ¶¶ 23–24.

Plaintiff's customer-list use-allegations rest entirely on information and belief, see Complaint, ¶¶ 4, 36, with no named customer, no contact date, and no solicitation channel pleaded — and no factual content tying any alleged solicitation to any identified customer or revenue loss, only the conclusory damages recital at Complaint, ¶¶ 77, 90. Under *Innova Hospitals San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018), information-and-belief allegations satisfy Twombly only when the underlying facts

15

lie peculiarly within the defendants' knowledge. Here, evidence of any solicitation of SerpApi customers would lie in Plaintiff's own CRM and customer records — not within Defendants' peculiar knowledge. In any event, Defendants do not possess such a list and have never used any such list to contact Plaintiff's customers. Kucinskas Decl. ¶25.

This case is similar to *Education Management Services, LLC v. Tracey*, 102 F. Supp. 3d 906, 914-15 (W.D. Tex. 2015), where Your Honor dismissed a TUTSA claim because the plaintiff admitted it had voluntarily given the defendant (who was a former independent contractor turned competitor) access to the trade secrets under a contractor agreement. The Court held that "[t]he fact that Defendant later allegedly breached the confidentiality provisions of the Agreements is irrelevant to the method by which he obtained access to the trade secrets in the first instance. Thus, under the plain language of TUTSA, Plaintiff has failed to state a claim for misappropriation of trade secrets."

That reasoning applies here. SerpApi's Complaint admits that Mr. Kucinskas received access to SerpApi's confidential information during his contractor relationship. Complaint ¶¶ 29, 32, 35. It also admits that the credentials SerpApi now complains about were credentials he had while working for SerpApi. Complaint ¶ 4. Plaintiff's own expert confirms the July 12, 2021 Stripe export occurred eleven days before Mr. Kucinskas's July 23, 2021 departure — while he was still an authorized contractor with active credentials. Schroeder Decl., ¶ 9.

Plaintiff's own expert further admits that Mr. Kucinskas's post-departure access was conducted "with his own login credentials." Schroeder Decl. ¶ 14 (for both the June 7, 2022 and November 9, 2021 accesses). The credentials at issue were the same credentials Plaintiff issued during the contractor relationship for which the Complaint pleads no revocation date. That admission forecloses any inference of "improper means" under 18 U.S.C. § 1839(6) or Tex. Civ.

Prac. & Rem. Code § 134A.002(2): credentials Plaintiff issued and for which the Complaint pleads no revocation date are not "stolen", "misrepresented", or "obtained by espionage."

To the extent the Complaint also pleads the "use" prong of misappropriation under 18 U.S.C. § 1839(5)(B)(ii)(II) and Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(b), *see* Complaint, ¶¶ 73, 85, 86, that theory fails for two independent reasons. First, the use prong still requires an identifiable trade secret, which the Complaint does not provide. Second, the Complaint identifies no specific use of any specific secret — it pleads only generalized similarity between the parties' products. *See* Complaint, ¶¶ 2, 5. In any event, Plaintiff itself characterizes the conduct as "improperly acquired and retained," Complaint, ¶ 86, treating both theories as the same authorized-then-retained access foreclosed under *Tracey*.

Therefore, because Plaintiff has failed to show that Defendants' alleged access to Plaintiff's information was not by improper means and Plaintiff has failed to show any use, its claims under the DTSA and TUTSA fail under *Tracey* and should be dismissed.

### ii. Plaintiff Fails to Plausibly Show It Employs Reasonable Measures

Plaintiff's DTSA and TUTSA claims also fail because contrary to its conclusory assertions, the Complaint (¶¶ 29-31) does not plausibly allege facts showing that Defendants took reasonable measures to protect its purported trade secrets, as required by 18 U.S.C. § 1839(3)(A) and Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A). More specifically, the Complaint fails to allege: (1) that Plaintiff's security practices were compliant with basic industry standards when Mr. Kucinskas was an independent contractor; (2) that they timely deprovisioned Mr. Kucinskas's credentials when he left SerpApi; (3) that they implement audit logging to keep track of who accesses their systems at what time and for what purpose; (4) that they do not use personal accounts rather than business accounts for critical infrastructure; and (5)

that they do not send plaintext passwords in unencrypted welcome emails with onboarding credentials. Martin Decl., ¶ 116; Ex. 6 (July 22, 2020 SerpApi onboarding email transmitting password r9>2ahXM in plaintext, in violation of NIST SP 800-63B (Rev. 3) § 5.1.1.2, OWASP ASVS 4.0.3 V2.5.1, and SOC 2 CC6.1).

As regards deprovisioning, the Complaint fails to allege that SerpApi revoked Mr. Kucinskas's GitHub collaborator, MongoDB, and Stripe account credentials when his ICA ended on July 23, 2021. Mr. Kucinskas's GitHub collaborator access to Mr. Khaleghy's personal repository at hartator/serpapi-mongodb-backup-v8 remained active for more than four years after Mr. Kucinskas's July 23, 2021 departure; SerpApi did not confirm revocation until Mr. Deoras's December 1, 2025 letter. Zimmerman Decl. ¶¶ 4-5. The Complaint pleads no revocation date or mechanism for the MongoDB or Stripe credentials. Plaintiff's silence on revocation as to those systems is its own pleading defect under 18 U.S.C. § 1839(3)(A) and Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A).

As regards auditing, the Complaint fails to allege that SerpApi maintained audit logs sufficient to capture *what data* was purportedly accessed, or that Mr. Kucinskas downloaded any data, let alone any purported confidential data during the Stripe (Complaint, ¶ 36) and MongoDB (Complaint, ¶¶ 37–38) connections —its own forensic investigator concedes the logs do not record that detail. Schroeder Decl., ¶ 11. More importantly, as to the post-departure MongoDB connections (Complaint, ¶¶ 37–38), the Complaint fails to allege what data was accessed or that Mr. Kucinskas downloaded any data — its own forensic investigator only identifies connection time stamps and IP addresses, and fails to identify any data that was accessed or downloaded. Schroeder Decl., ¶¶ 13-15. Martin Decl. ¶¶ 110-112 (SerpApi's auditing posture violates NIST SP 800-53 Rev. 5 AU-12). The Complaint also fails to allege any harms resulting from such

18

purported access. Significantly, Stripe is a payment processor, not a source code repository. Martin Decl., ¶¶ 127-128. Plaintiff's own forensic investigator confirms the same as to MongoDB: "SerpApi's MongoDB environment serves as a central repository that enables its code; containing the data they use to answer queries and to store information about users, test data, statistics, and more." Schroeder Decl., ¶ 13. Schroeder's "enables its code" phrase describes function, not content — MongoDB enables SerpApi's code to operate, but it does not contain that code. Martin Decl. ¶¶ 117, 127–128. Access to a Stripe payment account or a MongoDB data store does not enable access to or download of source code.

Plaintiff's "fingerprint" allegation — that each MongoDB connection contains a "driver line" proving Mr. Kucinskas retained SerpApi's codebase, Complaint, ¶ 4 — is implausible. The driver-name and driver-version string is identical for every client running the same MongoDB driver release; it does not uniquely identify a user, and it does not show what code was running on any particular machine. Martin Decl. ¶¶ 117-126. So, it cannot establish what code Mr. Kucinskas's computer was running, what data was accessed, or whether the connection was intentional. Thus, it fails to plead facts bridging the "fingerprint" inference to actual misappropriation conduct.

The Complaint pleads no facts showing that SerpApi: (1) deployed mobile device management or endpoint detection and response tools to Mr. Kucinskas's personal device during his time as an independent contractor. Kucinskas Decl., ¶ 5; (2) provided company devices or a company password manager as opposed to allowing Mr. Kucinskas to work on his personal MacBook Pro and use a personal password manager. *Id*. at 6; and (3) required Mr. Kucinskas to sign a security policy or document identifying supposed trade secrets. *Id*. at ¶ 7.  SerpAPI's lax

19

security measures are shown by the fact that on July 22, 2020 they sent Mr. Kucinskas his system credentials in plain text in an unencrypted onboarding email. *Id*. at ¶ 4.

The Complaint omits that SerpApi stored production database backups on its CEO's personal GitHub account (hartator/serpapi-mongodb-backup-v8) — a fact dispositive of unreasonable security measures. *Id*. at ¶¶ 9, 17. The repository contained production database backups and stated: "THIS IS UPDATING FROM OUR LIVE PRODUCTION DATABASE." *Id*. at 9. The repository contained data but no source code (which Plaintiff does not allege Defendants accessed or downloaded). *Id*. at 9. Mr. Kucinskas remained an active collaborator on that repository until December 1, 2025 – more than four years after he departed. *Id*. at 17. SerpApi revoked that access only after undersigned counsel raised the issue in a November 7, 2025 letter. Zimmerman Decl., ¶ 4.

SerpApi's MongoDB cluster was a runtime data store. It contained user records, API responses, usage statistics, and similar operational data — not application source code. Kucinskas Decl., ¶ 10. SerpApi's Stripe payment processing account does not contain source code either. *Id*. at 11. Mr. Kucinskas does not know whether or when his MongoDB or Stripe access credentials were revoked. *Id*. at 18.Leaving

 GitHub collaborator credentials and repository access active for more than four years after a contractor leaves is not consistent with reasonable security measures under NIST SP 800-53 Rev. 5 PS-4, CIS Controls v8 6.2, SOC 2 CC6.2, or ISO 27001:2022 A.5.18. *See* Martin Decl. ¶¶ 106-109. Independently, hosting production database backups on the CEO's personal GitHub account — rather than on an organizational account with corporate IT governance and audit oversight — bypasses standard security practice. *See* Martin Decl. ¶¶ 113-115; Ex. 4 (July 29, 2021 SerpApi CEO email promising to disable accounts); Ex. 5 (hartator/serpapi-mongodb-

20

backup-v8 repository on SerpApi CEO's personal GitHub account, banner "THIS IS UPDATING FROM OUR LIVE PRODUCTION DATABASE").

In short, a company does not take reasonable steps to protect trade secrets when it sends credentials in plain text, stores sensitive information insecurely, leaves credentials active for more than four years after a contractor departs, and allows continued access to a repository containing live production backups on the CEO's personal GitHub account. Because the facts show that SerpApi did not reasonably protect its alleged trade secrets, and because the Complaint does not plausibly allege acquisition, use, or resulting harm, the DTSA and TUTSA claims should be dismissed under Rule 12(b)(6).

## 2. **Breach of Contract**

Plaintiff's breach of contract claim fails against SearchApi because SearchApi was not a party to Mr. Kucinskas's ICA with SerpApi. *Adams*, at *8. The Complaint alleges confidentiality obligations arising from that ICA, and those obligations apply - if at all - only to the contracting party, Mr. Kucinskas. Because Plaintiff does not allege that SearchApi signed or assumed the ICA, it cannot be liable for any purported breach of that contract, and any attempt to extend the contract claim to SearchApi should be dismissed.

The contract claim against Mr. Kucinskas also fails because the Complaint does not plausibly allege that he copied or used SerpApi's confidential information or otherwise breached the ICA. It also does not allege facts showing any use of confidential information after the ICA ended on July 23, 2021. In any event, Section 10 of the ICA limited Section 4's confidentiality obligations to three years after termination, expiring on July 23, 2024. The Complaint pleads no specific use or disclosure of confidential information within that window, and any conduct

21

thereafter is outside any contractual obligation. Finally, the claim also fails because Plaintiff has not shown that it was damaged by Defendants' alleged breach.

Therefore, because Plaintiff's breach of contract claim is not plausible, it should be dismissed under Rule 12(b)(6).

### 3. <u>Copyright Infringement</u>

Plaintiff's copyright claim is based largely on alleged similarities between the parties' products, such as user-interface layout, documentation structure, plan names, and public-facing website language. But those alleged similarities concern functional features, ideas, and common industry terms, are not protected by copyright. 37 C.F.R. § 202.1(a); 17 U.S.C. § 102(b).

Plaintiff also claims copyright in names, functional language, and isolated fragments that are not protectable expressions. For example, JSON field names such as "position," "title," "link," and "snippet" are not protectable. 37 C.F.R. § 202.1(a). Likewise, functional API parameter names such as "engine," "q," and "location," which simply tell a system what information to process, are not protectable creative expression. 17 U.S.C. § 102(b). *Google*, 593 U.S. at 22-24.

Significantly, in its motion to dismiss the copyright infringement claim asserted against it in *Reddit, Inc. v. SerpApi LLC*, Case No. 1:25-cv-08736, now pending in the Southern District of New York, SerpApi cites cases for the same legal propositions set forth in the preceding paragraph regarding copyrightability.[6]

---

[6] *See* Case No. 1:25-cv-08736, [D.E. (46 at p. 16)]. Names are not copyrightable. *Moody v. Morris*, 608 F. Supp. 2d 575, 579 (S.D.N.Y. 2009), aff'd, 407 F. App'x 434 (Fed. Cir. 2011). Functional terminology is not copyrightable. *Stern v. Does*, 978 F. Supp. 2d 1031, 1042 (C.D. Cal. 2011), aff'd sub nom. *Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013).

Plaintiff's copyright claim to a compilation of its software is also deficient because Plaintiff identifies only individual field names and fragments of code, not any protectable original selection, coordination, or arrangement in the whole work as a complete compilation. *Feist*, at 348-49.

Plaintiff also fails to plead copying in a plausible way. Although Plaintiff references a registered computer program, it does not identify what protected portions of its work were allegedly copied. In particular, Plaintiff does not allege which specific portions of its copyrighted source code were copied or explain how the parties' code is substantially similar at the code level. Instead, the Complaint relies on generalized comparisons and legal conclusions, e.g., that Defendants copied, but provides no evidence of copying. That is not enough to state a plausible claim.

More damaging to Plaintiff's copyright claim, its own registration certificate states: "Material excluded from this claim: computer program" and lists the "Year of Completion" as 2025. (Complaint, Ex. 2.) That certificate expressly excludes computer program material from the registered claim, which contradicts the Complaint's theory that Defendants copied source code. So despite Plaintiff's "eight years" or "nearly a decade" allegations, the only registered copyright identified in the Complaint is a 2025 deposit that excludes the very computer-program material Plaintiff now seeks to protect.

For these reasons, the copyright infringement claim should be dismissed under Rule 12(b)(6).

### 4. Computer Fraud (CFAA)

Plaintiff's Computer Fraud and Abuse Act ("CFAA") claim should be dismissed because the Complaint does not plausibly allege (1) that the access was "without authorization" (or "in

excess of authorized access"), or (2) a qualifying statutory "loss" or "damage" pleaded with the required specificity. Put simply, by Plaintiff's own admission the "gates" were up so there is no civil liability. *Van Buren*, 593 U.S. at 389.

Plaintiff makes contradictory allegations regarding Defendants' access. On the one hand, Plaintiff alleges (Complaint ¶¶ 4, 37) that Mr. Kucinskas accessed its system using the same credentials from his contractor period, which necessarily means those credentials were still active. On the other hand, Plaintiff alleges (Complaint ¶ 110) that his authorization had been revoked.  Under *Iqbal* and *Twombly*, these contradictory allegations undermine the plausibility of Plaintiff's CFAA claim and support its dismissal.

Plaintiff alleges improper access to SerpApi's MongoDB server and Stripe account after Mr. Kucinskas left SerpApi. But the Complaint alleges the access occurred using authorized credentials, i.e., a "test/production backup" username and password, for which the Complaint pleads no revocation date. Plaintiff does not explain why that access qualifies as "without authorization" under the CFAA—particularly when under the statute use of authorized credentials to access a platform even when the party using those credentials is no longer supposed to be accessing the platform is not actionable under the CFAA absent any misuse, e.g., accessing information that exceeds their authorization, or stealing information. 18 U.S.C. § 1030(a)(2). The Complaint's only allegation of any actual information transfer is the pre-departure July 12, 2021 Stripe customer-list download — which occurred while Mr. Kucinskas was still an authorized contractor. Schroeder Decl., ¶ 9. For the post-departure MongoDB and Stripe activity (Complaint, ¶¶36–38, 109–110), the Complaint identifies no specific data exported, downloaded, or extracted, alleging only access events.

24

The Complaint also fails to plead the statutory loss or damage required by the CFAA. *See* 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), 1030(e)(8) and (11). To state a CFAA claim, Plaintiff must allege qualifying loss—such as costs to investigate, respond to, or restore a system—or qualifying damage as defined by the statute. Plaintiff does not do so. Instead, it relies on alleged access counts and supposed competitive harm, neither of which is enough without factual allegations showing statutory loss or damage.

The Complaint also does not allege facts showing recoverable CFAA damages. It does not plead that Mr. Kucinskas took, used, deleted, altered, or damaged any information during the alleged post-relationship access to the MongoDB server or Stripe account. Without such facts, Plaintiff has not plausibly alleged any qualifying CFAA loss or damage caused by that access.

Because Kucinskas used valid, active credentials to access Plaintiff's computer, his access was authorized and did not violate the CFAA. *See* 18 U.S.C. § 1030(a)(2)(C); *Van Buren*, 593 U.S. at 389. Further, the Complaint fails to plausibly allege that Defendants downloaded or extracted *code* from the MongoDB server (Complaint, ¶¶ 37–38, 109) — MongoDB is a runtime data store, not a code repository (Martin Decl., ¶¶ 117–126), and SerpApi's own forensic investigator fails to identify any data that was accessed or downloaded. Schroeder Decl., ¶¶ 13-15.  As a result, they did not exceed authorized access by obtaining information they were not entitled to obtain, and they likewise cannot be held liable under § 1030(a)(2)(C).

As to Plaintiff's allegations (Complaint, ¶¶ 36-38) concerning purported access to SerpApi's Stripe account and MongoDB server, even if Plaintiff could prove that Mr. Kucinskas connected to those systems, that would not be enough to sustain its CFAA claim. Plaintiff must still plausibly allege that the access was unauthorized, rather than the result of credentials for which the Complaint pleads no revocation date; that identifiable data was actually obtained or

25

transferred, rather than mere connection attempts or handshakes; that Defendants used such data for SearchApi's benefit; and that Plaintiff suffered quantifiable harm as a result. The Complaint does not do so.

The CFAA allegations against Defendants are conclusory. The Complaint does not plausibly allege which protected computer was supposedly accessed, when such access occurred, what information was allegedly obtained, or facts showing that any qualifying CFAA loss was caused by Defendants' purported conduct.

For all of these reasons, the CFAA claim should be dismissed under Rule 12(b)(6).

## V.     **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss SerpApi's Complaint (D.E. [1]) for lack of personal jurisdiction as to SearchApi, dismiss the Complaint for improper venue as to SearchApi, and dismiss the DTSA, TUTSA, Breach of Contract, Copyright Infringement and CFAA claims under Rule 12(b)(6) as to both SearchApi and Mr. Kucinskas.

Dated: April 20, 2026.                    Respectfully submitted,

                                          **LUCOSKY BROOKMAN LLP**

                                          */s/ Jean-Marc Zimmerman*
                                          Jean-Marc Zimmerman (*pro hac vice*)
                                          101 Wood Avenue South
                                          Woodbridge, New Jersey 08830
                                          Telephone: (908) 768-6408
                                          jmzimmerman@lucbro.com

                                          **-AND-**

                                          */s/ Mary-Ellen King*
                                          Mary-Ellen King
                                          State Bar No. 24067219
                                          1250 S. Capital of Texas Highway
                                          Bldg 3, Ste. 400
                                          Austin, Texas 78746
                                          Telephone: (512) 298-1182
                                          meking@lucbro.com

                                          **ATTORNEYS FOR DEFENDANTS
                                          ZILVINAS KUCINSKAS AND
                                          SEARCHAPI LLC**

27

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above foregoing instrument has been served via CM/ECF electronic filing, in accordance with the Federal Rules of Civil Procedure, on April 20, 2026, to the following counsel of record:


**KIRKLAND & ELLIS LLP**

Kat Li
State Bar No. 24070142
kat.li@kirkland.com
401 W. 4th St.
Austin, TX 78701
Telephone: (512) 678-9100

Akshay S. Deoras (*pro hac vice* forthcoming)
akshay.deoras@kirkland.com
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Joshua L. Simmons (*pro hac vice* forthcoming)
joshua.simmons@kirkland.com
Leslie M. Schmidt (*pro hac vice* forthcoming)
leslie.schmidt@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
**ATTORNEYS FOR PLAINTIFF**
**SERPAPI, LLC**


*/s/ Mary-Ellen King*
Mary-Ellen King

28