# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| SerpApi, LLC, | )1:26-cv-00143-DAE |
| | ) |
|      Plaintiff, | ) |
| vs. | )Austin, Texas |
| | ) |
| Zilvinas Kucinskas and | ) |
| SearchApi LLC, | ) |
| | ) |
|      Defendants. | )May 26, 2026 |


*********************************

MOTION HEARING

BEFORE THE HONORABLE MAGISTRATE JUDGE MARK LANE

*********************************

APPEARANCES

For Plaintiff:        Ms. Kathy H. Li
                      Mr. Cameron Lindsay
                      Kirkland & Ellis LLP
                      401 West Fourth Street
                      Austin, Texas 78701
                      512-678-9167
                      kat.li@kirkland.com
                      cameron.lindsay@kirkland.com

- and -

                      Mr. Akshay S. Deoras
                      Kirkland & Ellis LLP
                      555 California Street
                      27th Floor
                      San Francisco, California 94104
                      415-439-1400
                      akshay.deoras@kirkland.com

APRIL C. BALCOMBE, CERTIFIED REALTIME REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

APPEARANCES CONTINUED:

For Defendants:          Mr. Jean-Marc Zimmerman
                         Lucosky Brookman LLP
                         1250 South Capital of Texas Highway
                         Building 3, Suite 400
                         Austin, Texas 78746
                         512-298-1182
                         jmzimmerman@lucbro.com


Transcriber:             Ms. April Balcombe, CSR, CRR, CRC
                         501 West 5th Street, Suite 4150
                         Austin, Texas 78701
                         (512) 391-8795
                         April_Balcombe@txwd.uscourts.gov

Proceedings reported by digital sound recording, transcript produced by computer-aided transcription.

                    P-R-O-C-E-E-D-I-N-G-S

          DEPUTY CLERK:  Court calls for a Motion Hearing, *SerpAci* [sic], *LLC, v. Zilvinas Kucinskas and SearchApi*, Case Number 26-CV-143.

          THE COURT:  Good morning, all.  Let's start with announcements.  Tell who you are and who you represent.  Let's start with here on my left, with who I trust are our Plaintiffs.

          MS. LI:  Good morning, Your Honor.  Kat Li of Kirkland & Ellis on behalf of Plaintiff SerpApi.  With me today are my colleagues, Akshay Deoras and Cameron Lindsay, also of Kirkland & Ellis.  We also have the founder and CEO of SerpApi, Mr. Julien Khaleghy, as well as the general counsel of SerpApi, Mr. Chad Anson.

          THE COURT:  All right.

          MS. LI:  We are ready to proceed, Your Honor.  Your Honor, and we are happy to defer to the Court in terms of the order the Court would like to hear the motions, but if the Court doesn't have a preference, we can start with the motion to seal.

          THE COURT:  Very good.  Over here?

          MR. ZIMMERMAN:  Good morning, Your Honor.  Jean-Marc Zimmerman of Lucosky Brookman on behalf of the Defendants, Zilvinas Kucinskas and SearchApi, LLC.

          THE COURT:  Good morning to you as well.

Thanks, Stephanie.  Is it cold in here?

All right.  Okay.  I know one of the tough things about being an attorney is you appear in front of a bunch of different judges.  Every single one of us has their own different way of doing things and how they do them, so here is mine.

I feel we're kind of underwater in the Austin Division of the Western District of Texas for a number of different reasons, and so one of the fixes is to set things for hearings when they come in when they are referred to me -- when matters are referred to me by our District Judges.  Why?

Because I've found that I've had great success with lawyers meeting and conferring and resolving the disputes that they have.  And, so, boom, overnight sometimes, I'll have a 50 percent success rate on what I thought I was going to have to write on, poof, goes away.  And then the other 50 percent, you have to have the hearing, and that's my job, so I'm happy to do it.

But there are hearings that I set -- and this is a classic example -- where I looked at it and I printed it all out a couple weeks ago, but didn't look at it until this weekend when I read it all.  I can do one of two things this morning.

I can let you start over on the Plaintiff side, let the Defense start, tell you I'm going to take it under advisement and go back there, right?  Not my style.

I've read through this and if you read through something, both sides are doing the best job they can do.  You arrive at some conclusions.

I'm telling you that because I know you have this much to tell me this morning, but I have this much that I'm really interested in, so I tend to ask questions and interrupt.

But, at least, I like to start the old, traditional way, which is to allow the Plaintiff to tell me the hotspots on their motion to seal and then hear the Defense on why that's not what you want to do.

So if I interrupt you and I'm asking you questions, I want you to know that's where I'm coming from, and I do want to take up the motion to seal first.

And so, with that, who is going to be the speaker on Plaintiff issues?

MR. DEORAS:  It will be me, sir, Akshay Deoras.

THE COURT:  Okay.  All right, Mr. Deoras.

MR. DEORAS:  Thank you, Your Honor.

So I think it's helpful for the motion to

seal just to give a little context of how this came up. We represent SerpApi. They are an Austin-based company. They were founded about a decade ago.

THE COURT: What does the "API" mean?

MR. DEORAS: API is an acronym. It means application programming interface. And so what they do is they develop tools that help AI companies -- you know, you see the AI companies that are in the news nowadays, they help develop tools that help the AI companies gather information that they use to train their models and do other, you know, research work with. So they -- you know, so you have Amazon, Google, and other search engines.

They have APIs that plug in, so it's basically a piece of code that will plug into those and help them get information that they can then pass on to the other AI companies that you've probably heard of in the news nowadays.

They are our client's customers. So, they have been developing this technology right here for about the last nine years or so.

THE COURT: And what does -- does the "Serp" part of it mean, anything?

MR. DEORAS: Serp is a term that's used in this industry to refer to search, kind of where it hits

on results, that you might be able to get from looking on the Internet through various search engines, like Google and Amazon and other companies.

THE COURT:  All right.  How many people work at Serp?

MR. DEORAS:  Currently, it's about 50.

THE COURT:  Okay.  All right.  I keep interrupting you.

MR. DEORAS:  No problem.  Happy to answer any questions you have that might be helpful here.  But just to kind of fast-forward, they have been developing this technology.  They've developed a pretty significant customer base.

They have a contractor, Mr. Kucinskas, who is one of the Defendants in this case, who helped work on the technology with them.  He worked for them for a little while and then he left, didn't think anything of it as part of the job here.

And then they discovered shortly after, we were called in that he had started his own company with a pretty similar-sounding name, called "SearchApi," and he set up a website, looked almost identical to our client's website.

He had several of the same pieces of copied text from the website.  The manual's instructions were

the same.  The code examples that he had were the same. And when you look at it, the results that you were getting were the same, down into errors, like bugs in our code that we knew about were showing the same.

We took a look at it, realized -- this is all spelled out in our complaint -- that he had actually been accessing our confidential servers to download materials after he left, both technical materials that are confidential relating to all --

THE COURT:  Where are y'all's servers?

MR. DEORAS:  They're around the country, but they're also here in Austin.

THE COURT:  Okay.  Okay.

MR. DEORAS:  And the concern is, he actually got access to the source code that's at issue in the case and for our software.  He downloaded our --

THE COURT:  How did he get that access?

MR. DEORAS:  Well, he was a contractor and so he had access.  He also was responsible for security at the client.

THE COURT:  I mean, he had left, right?

MR. DEORAS:  Yes.

THE COURT:  His credentials weren't revoked?

MR. DEORAS:  His credentials were revoked, eventually.  They weren't revoked initially, but they

were revoked eventually when we realized that they hadn't been turned completely off. He also figured out a backdoor to one of the servers and he was able to use that backdoor to access some materials.

So that's why we have got both types of claims in here. We have got a DTSA claim; we have a TUTSA claim, a Texas Trade Secret Act; and also a computer fraud, a CFAA claim because of unauthorized access to the servers.

But the long and the short of it is, we've spelled these facts and all of our concerns in letters to Mr. Kucinskas and wanted to try to see, like, what can we do to get him to stop using our intellectual property.

And our previous discussions were, Well, we're not doing that, We're not using our -- your technology and your concerns are baseless.

And we were sort of at an impasse. We were getting ready to file this lawsuit. We decided, let's try one more time to see if we can settle this case.

And we had business-to-business discussions with my client's CEO and Mr. Kucinskas to try to see if we could resolve this. We agreed beforehand that those discussions would be confidential. That was als- -- that was Defendant's suggestion, that the discussions

would be confidential and held pursuant to Rule 408

THE COURT:  And that's Mister -- is it a letter or an email from Mr. Zimmerman?

MR. DEORAS:  It was an email.

THE COURT:  It was an email from Mr. Zimmerman to who?

MR. DEORAS:  To me.

THE COURT:  To you.  It says:  Will be held in confidence and pursuant to FRE 408?

MR. DEORAS:  Correct.

THE COURT:  It says:  SerpApi agreed, but that's you?

MR. DEORAS:  That's me.

THE COURT:  (Reading.)  You -- "SerpApi confirms that all discussions at the meeting between the parties will be confidential and pursuant to Rule 408." And then you met him?

MR. DEORAS:  And then we met.  So we met -- the meeting was kind of two part.  We had a meeting that was just with outside counsel and also the internal business folks, and then we had a separate session where the two business people just met themselves to try to discuss and kind of hash this out.

That whole meeting -- the only reason we agreed to the meeting was because we said it would be,

you know, confidential and held pursuant to 408.

They weren't able to resolve it, and I don't have to get into the discussions.  I'm happy to if you'd like to, but they weren't able to resolve it --

THE COURT:  Tell me what is in their answer or the pleadings, Motions to Dismiss, that you don't like.  It's outlined in the briefing.  But just for the record, what are the sentences that are problematic for you?

MR. DEORAS:  So, what they claim in their motion -- it is in the Motion to Dismiss.  It's in the intro to Motion to Dismiss.  It is immaterial to the Motion to Dismiss -- obviously, has nothing to do with the complaint.  But the sentences that we have and we've highlighted them in our exhibit to our motion --

THE COURT:  I tell you, I don't want to seal this hearing, so don't --

MR. DEORAS:  Yeah, just essentially we made a proposal because we understand, ideally we'd just like them to stop using our technology.  That might be just a bridge that's just too hard.

We're not, you know -- we're not -- they might not want to shut down the company.  So we made a proposal, here's -- We had thought about this; here is a way that we could solve this problem; we don't have to spend money on lawyers; we can move on.

They characterized that proposal as a threat, and they say, because it's a threat, that if you don't agree to this proposal, we're going to file litigation, that somehow the confidences were all -- were lost. And they're now allowed to put this in the public filing in their Motion to Dismiss.

It didn't make any sense to me. Any settlement discussion pre-suit is necessarily, can you agree to this? If you can't agree to this, we're going to have to file suit.

THE COURT: Okay. It doesn't make any sense to me.

Mr. Zimmerman, what about these confidential negotiations between the lawyers and the higher-ups in the companies, why -- well, just tell me why you needed -- why did you need to put that in your Motion to Dismiss.

MR. ZIMMERMAN: To provide context.

THE COURT: What context? Every single case I've ever been involved with involves -- before lawsuits are filed, generally speaking, particularly things at this level, lawyers talking to each other in advance of the lawsuit being filed.

MR. ZIMMERMAN: If I may, Your Honor. From the Defendant's perspective, the reason we agreed and

proposed that the discussions would be in confidence under Rule 408 was because we thought there was going to be an exchange of technical information.  There was no discussion of technical information.

THE COURT:  That's neither here nor there.  At some point while you -- when you realized it wasn't technical, did you say, hey, listen, you remember that representation that I made to you, that this will be confidential and it will be governed by 408, it's not both.

It's confidential, in confidence, and 408. Did you ever advise the Plaintiff, Time out; we're not talking about technical stuff; this needs to be on the record?

MR. ZIMMERMAN:  No, because I didn't find out about that until after the discussions between my client and the principal of SerpApi had occurred.

THE COURT:  So then you took it upon yourself to say, I'm no longer held to my representations that our meetings would be in confidence and pursuant to 408. Is that it?

MR. ZIMMERMAN:  Well, not exactly.  Under Rule 408, you cannot introduce settlement discussions to prove or disprove the claim -- or disprove or prove the liability for the damages.

And that's not what was happening here.  You can introduce discussions that are supposedly held pursuant to 408 or pursuant to an agreement for purposes of showing other circumstances, showing context, a course of nature.  That's what occurred here and that's why we did it.

So in addition to that, the Plaintiffs have been publicizing on various media critical things about my clients.  So taken together, after they filed the lawsuit, and after we thought there was perhaps going to be some sort of further discussions -- because that was one of the other things that occurred.

After the last discussion between the principals, we were supposed to have a follow-up, but that never occurred.  They went ahead and they filed the complaint.

THE COURT:  So what?

MR. ZIMMERMAN:  I'm just giving you context and that's what 408 provides.  And also with regard to the agreement, there was no agreement because there was no meeting of the minds.

THE COURT:  So, in every case in which you represent in the beginning that you're going to just talk to the other side in confidence subject to 408, you unilaterally decide that whatever the circumstances are,

you can now make it public -- because that's what you're asking us to do.

And then you're wrapping yourselves in the Constitution and First Amendment and everything else that the public has a right to know.

This is a private matter that you were making public. This is not a public matter that a party is seeking to make private, right?

MR. ZIMMERMAN: It was a conversation between the parties. Yes, Your Honor.

THE COURT: Okay. Have you read your email lately?

MR. ZIMMERMAN: Yes, I have.

THE COURT: Okay. It doesn't say, confidence -- will be held in confidence or pursuant to pursuant Rule 408. It says: Will be held in confidence and pursuant to Rule 408. Forget about 408, then.

You gave somebody your word.

Okay. The motion to -- what is the proper starting to this?

Opposed motion to seal Defendants' Motion to Dismiss, that is granted.

It's not even -- when I was reading this this weekend, my head was almost exploding. Mr. Zimmerman, I can tell you, I'm a real

right-and-wrong guy.  This is wrong.  And for you all to defend it, I can't unring that bell.  Okay?  So now, we're going to turn to some of the other things that you've asked me to look at.

But before we do that, do I really understand the facts of this case, that your client worked for the Plaintiff and then, across the entire world, the Plaintiff's biggest competitor or the burgeoning competitor on the horizon, lo and behold, happens to be your client who lives in Latvia?  What are the chances of that?

And then the audacity, the cuteness to name his company, which "Serp" and "Search" are almost synonymous, and then use the same API acronym at the end.

That's strike two in terms of honor, in terms of decency, in my opinion.  So tell me why they should not be entitled to jurisdictional and venue discovery against that backdrop.

MR. ZIMMERMAN:  Because they have not been proven and I take issue with certain representations made by Plaintiff's Counsel.

THE COURT:  Like what?

MR. ZIMMERMAN:  This is the first time I'm hearing that they supposedly have servers in Texas.

They haven't submitted any declarations -- if I may, Your Honor, the servers at issue -- the MongoDB servers are in New Jersey and the Sprite servers are in California.

They have not shown any conduct directed into Texas or this district by either Mr. Kucinskas or SearchApi arising out of the claims --

THE COURT:  Where the servers are in the United States is a red herring.  If the Plaintiff is right here in Austin and are accessing servers in California and Jersey, that's neither here nor there.

MR. ZIMMERMAN:  The other thing, Your Honor, is we submitted a declaration from a software expert that was part of our Motion to Dismiss.

Now, they alleged that Mr. Kucinskas accessed information and took information, and there is no evidence of that.  There is no evidence that he downloaded anything --

THE COURT:  We're at Motion to Dismiss stage.

MR. ZIMMERMAN:  I understand, Your Honor --

THE COURT:  Save that thunder for Summary Judgment and Judge Ezra.

Where can your clients be sued in the United States?

MR. ZIMMERMAN:  Well, servers are in New

Jersey, so the Plaintiffs made a big issue of the fact that the MongoDB servers were accessed and we take issue with the fact that they were accessed by our client.

In fact, they're -- Mr. Schroeder, Plaintiff's expert, cannot even ascertain with certainty that the connections were from Defendants in this case.

My client uses a MacBook computer that was purchased for him as part of his compensation when he was an independent contractor, but it's his computer -- personal computer.

He was using that when he was working for SerpApi as a contractor, but certain logging credentials are cached there and over time, they periodically establish or try to establish connection to the servers' various platforms that the computer has accessed in the past.

THE COURT:  Okay.  Where else can your client be sued in the United States?

MR. ZIMMERMAN:  New York.

THE COURT:  Okay.

MR. ZIMMERMAN:  He's got an office there in Wyoming, where he's from.

THE COURT:  Your client is not in Latvia?  He has an office in New York?

MR. ZIMMERMAN:  He has an office in New York.

THE COURT:  Okay.

MR. ZIMMERMAN:  He's a Wyoming company, and he resides personally in Lithuania.

THE COURT:  Okay.

MR. ZIMMERMAN:  And I guess they could also suit -- they're going to make an issue with the sprite, they could be sued in California.

THE COURT:  So the case law out there says you can sue in the federal jurisdiction in which the servers are?  That -- that, to me, is a red herring.

To me, this is about whether or not they've got well-pled facts.  We are not at summary judgment stage and you've just brought it up.  You've poured out a lot of facts that are outside the complaint in the form of these declarations.

Are they supposed to just sit back and then -- or do their own declarations which immediately creates a fact issue?  Or is the better thing to do to test -- particularly given some of the things that I've already talked with you about -- to test some of the representations that the Defendant is making in this case?

MR. ZIMMERMAN:  The case law is pretty clear. They have not demonstrated any contacts into this state or into this district by my client individually or by

his company.

THE COURT:  We'll see.

MR. ZIMMERMAN:  Well, I would ask, Your Honor -- it sounds like you're going to permit them to have some discovery and I would ask that the discovery be limited to written discovery solely to the issue of context in this state of --

THE COURT:  You're not taking the proper measure of me in the way I feel about your defense so far and the way you've done it.  That request is denied.

Your motion for venue and jurisdictional discovery is granted along the lines of what you requested.  If y'all would have agreed to this -- if you're not worried about any of this, this could have been done by agreement two or three months ago, and you'd already be out of the case, if I understand your series of arguments that you have made to me and have made in the pleadings.

But you opted not to do that.  You've opted to fight.  You have that right to do it.  But you have lost woefully here with me.  And if you can't tell, I'm not going to have an easy time unringing the bell here.

I can't believe you stood up and argued that the discussions -- the settlement discussions you all had weren't confidential.  There would be a case that

would stand for the principle that that could be admissible in every case that's filed.

It's never done.  Judge Ezra is not letting that in at a jury trial down the road, if y'all even get to that.  This was easy, as you can tell.  Your motions are granted.  Your motions for extension of time are granted.

And I'll tell you both something.  It has become incredibly difficult to deal with sealed documents now.  We have to -- we have different databases we have to go to.

I am going to ask you both politely, don't seal it unless you have to.  If you have to seal something, make it a sealed exhibit.  The verbiage in pleadings -- I remember Judge Yeakel talking about this in 2012 when I started.  Parties over-seal everything.

I mean, I have to tell you, y'all could have filed a motion to strike.  I would have stricken the language in the Motion to Dismiss, but you didn't ask for that.  I'm not going to give it.  To redact it, it's enough.

And Judge Ezra -- and by the way, haven't you even told me -- or it's in the pleadings -- that that language is not material to the Motion to Dismiss in any way?

MR. ZIMMERMAN:  They sort of twisted the import of what I was trying to say.

What I was trying to say, it's relevant towards showing context.  That fact is the whole reason we introduced it, because the whole course of conduct that you're -- I guess, it's not something the Court wants to hear, but --

THE COURT:  No, I'm willing to hear.  But I mean, what you're advocating stands for the proposition that plea negotiations or settlement negotiations always provide context; ipso facto, they're admissible.

MR. ZIMMERMAN:  No, Your Honor, they're not, but --

THE COURT:  Then what is the distinction between your -- y'all's conversations and what I just described, which is the usual case?

MR. ZIMMERMAN:  Well, usually, parties are engaged in discussions and if they can't reach an agreement, but here, there were no substantive settlement discussions.  It wasn't -- I'm not going to get into the details because this is an open hearing --

THE COURT:  Yes, please.

MR. ZIMMERMAN:  -- but the substance of what was written in the statement that they seek to seal --

THE COURT:  But do you hear yourself?  The

only reason you were talking was because of these representations that you exchanged in advance of talking.

MR. ZIMMERMAN:  Again, Your Honor, I come back to what I was saying.  The whole thought that our -- from Defendant's standpoint, is that we thought there was going to be a discussion of technical terms.  And there were none.  This is a straight --

THE COURT:  Then it was -- then you made a bad deal because you should have made that apparently clear, This is confidential and subject to 408 only to the extent we talk about technical terms.

What I read it is you made a representation that the discussions would be robust in an effort to settle this hairball.  I just can't believe you're defending that.

We're adjourned.

*(Proceedings adjourned.)*

REPORTER'S CERTIFICATE

I, APRIL C. BALCOMBE, DO HEREBY CERTIFY THAT THE FOREGOING WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES, ON THIS 6th DAY OF JUNE, 2026.

/S/April C. Balcombe
APRIL C. BALCOMBE, CSR, CRR
Official Court Reporter
United States District Court
Austin Division
501 West 5th Street, Suite 4150
Austin, Texas 78701
(512) 391-8795
SOT Certification No. 5752
Expires: 7-31-26

APRIL C. BALCOMBE, CERTIFIED REALTIME REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)